DELAWARE AND HUDSON CANAL COMPANY, DEFENDANT IN ERROR, v. DOROTHEA MAHLENBROCK, ADMINISTRATRIX OF JOHN H. W. BOSE, DECEASED, PLAINTIFF IN ERROR.

Argued March 9, 1899—Decided June 26, 1899.

A statute requiring that every foreign corporation * * * before transacting any business in this state shall file in the office of the secretary of state a copy of its charter or certificate of incorporation, &c., and a statement, &c., of its capital stock authorized and the amount actually issued, the character of the business which it is to transact in this state, and designating its principal office in this state and an agent,

&c., upon whom process against such corporation may be served, &c. ; and upon the filing of such copy and statement the secretary of state shall issue to such corporation a certificate that it is authorized to transact business in this state and that the business is such as may be lawfully transacted by corporations of this state, &c. ; and also providing that until such corporation so transacting business in this state has obtained said certificate of the secretary of state it shall not maintain any action in this state upon any contract made by it in this state. *Held*—

1. That a foreign corporation which makes a single sale of its product and accepts a guarantee of payment in this state does not transact business within the meaning of the statute.

2. That the statute does not apply where the foreign corporation, accepting an order for goods given to it by a resident of New Jersey, receives a guarantee executed in this state and mailed to the corporation at its home office, and thereupon fills the order—the contract not being concluded in New Jersey.

On error to the Supreme Court.

For the plaintiff in error, *Queen & Tennant.*

For the defendant in error, *Frank B. Colton.*

The opinion of the court was delivered by

DEPUE, J.   The Delaware and Hudson Canal Company is a corporation created by the laws of Pennsylvania. Its principal office is at Rondout, New York, with a branch office in New York City under the management of William S. Rodie, an agent.   The company is engaged in the mining and sale of coal at Honesdale, Pa.   The firm of H. H. Apman & Company are coal dealers at Jersey City.   Bose in his lifetime resided in Jersey City.   The firm of H. H. Apman & Company applied to an agent of the coal company to purchase coal on credit.   Credit was refused unless satisfactory security for payment was furnished.   Rodie, the plaintiff's agent, prepared a written guarantee, which was sent to Henry A. Apman, a member of the firm of H. H. Apman & Company.   The guarantee was signed by Bose in Jersey City, the signature being obtained by John Apman, another member of the firm.   An order for the coal was made out by the

Apmans and sent by mail from Jersey City to the company's address at Rondout. The coal was shipped by the plaintiff from Honesdale, Pa., consigned to Apman & Company at Jersey City. The unpaid bill for the coal amounted to $933.88.

The suit is upon the guarantee. At the trial the learned judge directed a verdict for the plaintiff, and this writ of error was sued out by the defendant on exceptions to his instruction. The plaintiff has not filed in the office of the secretary of state the statement required of foreign corporations transacting business in this state by section 97 of the Corporation act of 1896. *Pamph. L., p.* 307; *Dill N. J. Corp.* 47. The defence was that by force of section 98 of the act the plaintiff was disabled from maintaining its action in this case. The contract on which the plaintiff agreed to sell the coal to Apman & Company was conditional on the furnishing of satisfactory security. Until the guarantee came to and was accepted by the company the contract between these parties was not concluded. It does not distinctly appear in the evidence in what manner the guarantee was sent to the plaintiffs. The fair inference is that it was mailed to Rondout with the order for the coal. If that be so the statute does not apply to this transaction. It was so decided by the Supreme Court in *Faxon Co.* v. *Lovett Co.,* 31 *Vroom* 128.

The important question is whether upon the proper construction of the statute it would control in this case if the guarantee had been made and delivered in this state, so that the contract between these parties would be a contract made by a foreign corporation within the State of New Jersey. The section of the act referred to provides that "every foreign corporation, except banking, insurance, ferry and railroad corporations, before transacting any business in this state shall file in the office of the secretary of state a copy of its charter or certificate of incorporation attested, &c., and a statement attested, &c., of its capital stock authorized and the amount actually issued, the character of the business which it is to transact in this state, and designating its principal office in this state and

an agent, &c., upon whom process against such corporation may be served, &c. ; and upon the filing of such copy and statement the secretary of state shall issue to such corporation a certificate that it is authorized to transact business in this state and that the business is such as may be lawfully transacted by corporations of this state," &c.   Section 100 provides that " every foreign corporation transacting any business in any manner whatsoever, directly or indirectly, in this state without having first obtained authority therefor, &c., shall for each offence forfeit to the state the sum of $200, to be recovered with costs in an action prosecuted by the attorney-general in the name of the state."   Section 98 provides that " until such corporation so transacting business in this state shall have obtained said certificate of the secretary of state it shall not maintain any action in this state upon any contract made by it in this state."   Section 101 provides that " when by the laws of any other state or nation any other or greater taxes, fines, penalties, license fees or other obligations or requirements are imposed upon corporations of this state doing business in such state or nation, &c., so long as such laws continue in force in such foreign state or nation the same taxes, fines, penalties, license fees, obligations and requirements, of whatever kind, shall be imposed upon all corporations of such other state or nation doing business within this state."

There was no proof in this case that the plaintiff had transacted any business in this state other than the transaction in question.   The case turns upon the construction of the statute and the meaning of the words " transacting any business."

In Hoagland *v.* Segur, which was an action on a covenant in a contract for the sale of a " banking business," that the covenantor would " withdraw from the business of banking and not engage in the same at any time within ten years," and in the clause liquidating the damages the words used were, " to abandon, abstain from and not engage in the business of banking," it was held that the term " business " did not denote a single act of receiving deposits, but the aggrega-

tion of acts which fairly constituted the occupation of a banker—that it was a word used as synonymous with occupation, and signified more than the doing of acts which are usually done by persons engaged in the pursuit of a particular calling. 9 *Vroom* 230, 237. In Stone *v.* United States Casualty Co. the suit was on a policy of life insurance which contained a condition that "changing occupation, profession or employment to a more hazardous exposure" should render the policy void. The court construed the words "changing occupation," &c., as meaning engaging in another employment as usual business. Chief Justice Beasley, in delivering the opinion of the court, said, "this language has respect to employments, and not to individual acts." 5 *Vroom* 371, 375. Where the charter of a bank provided that its operations of discount and deposit should be carried on in the village of I., and not elsewhere, and the cashier discounted a note at the city of New York for the purpose of securing a demand due the bank, it was held that the restriction in the charter related only to the customary and permanent business operations of the bank, and not to an isolated transaction, like the one in question. *Potter* v. *Bank of Ithaca*, 5 *Hill* 490; *Suydam* v. *Morris Canal and Banking Co.*, 6 *Id.* 217. In Cooper Manufacturing Co. *v.* Ferguson, the Supreme Court of the United States, in construing a provision of the constitution of Colorado that " no foreign corporation shall do any business in this state without having one or more known places of business and an authorized agent or agents in the same, upon whom process may be served," and an act of the legislature of the state to give effect to that clause of the constitution, which provided that foreign corporations should, before they were authorized to do any business in the state, make and file a certificate similar to the certificate required by our act, held that the contract made by a corporation of Ohio in Colorado, to manufacture machinery in Ohio and deliver it in Ohio, did not constitute a carrying on of business in Colorado and was not forbidden by its constitution and law. In the opinion of the court Mr. Justice Woods used this language:

"Reasonably construed, the constitution and statute of Colorado forbid, not the doing of a single act of business in the state, but the carrying on of business by a foreign corporation without the filing of the certificate and the appointment of an agent as required by the statute. The constitution requires the foreign corporation to have one or more known places of business in the state before doing any business therein. This implies a purpose at least to do more than one act of business; for a corporation that has done but a single act of business and purposes to do no more cannot have one or more known places of business in the state. To have known places of business it must be carrying on or intending to carry on business. The statute passed to carry the provision of the constitution into effect makes this plain; for the certificate which it requires to be filed by a foreign corporation must designate the principal place in the state where the business of the corporation is to be carried on. * * * The making in Colorado of the one contract sued on in this case, by which one party agreed to build and deliver in Ohio certain machinery and the other party to pay for it, did not constitute a carrying on of business in Colorado." 113 *U. S.* 727, 734.

The statute in New York enacts that "no stock corporation, other than a moneyed corporation, shall do business in this state without having procured from the secretary of state a certificate that it has complied with the requirements of the law to authorize it to do business in the state," with a section similar to our act prohibiting foreign corporations which have not complied with the statute from bringing suits in the state courts on any contract made in the state. The courts of New York in construing this statute have held that procuring in New York orders for goods by travelling agents of a foreign corporation, which orders are to be transmitted to the home office of the corporation for approval, after which the goods are to be shipped from the home office to the buyer in New York, did not constitute doing business within the meaning of the statute. *Murphy Varnish Co.* v. *Connell*, 32 *N. Y. Supp.* 492; *Tallapoosa Lumber Co.* v. *Holbert*, 39 *Id.*

432; *American Broom, &c., Co.* v. *Addickes,* 42 *Id.* 871; *National Knitting Co.* v. *Bronner,* 45 *Id.* 74.

Mr. Thompson says: "Many of the constitutional provisions and statutes under consideration prohibit foreign corporations from *doing or carrying on business within the state,* unless they have previously complied with the conditions therein named; and the question has frequently arisen under them, what constitutes a doing or carrying on of business within their meaning? The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state, are not a doing or carrying on of business by a foreign corporation within the latter state, but that these provisions are levelled against the acts of foreign corporations entering the domestic state by their agents and engaging in the general prosecution of their ordinary business therein." This statement of the law is vouched for by the citation of many cases. 6 *Thomp. Corp.* § 7936. A collection of cases on this subject will be found in the note to 5 *Am. & Eng. Encycl. L.* 71, *tit.* "*Business,*" and in 8 *Id.* 346, *tit.* "*Foreign Corporations.*"

On a consideration of the entire legislation on this subject the construction of our statute seems to be clear. The statute requires the filing by the corporation of a copy of its charter, and a statement of the amount of capital stock authorized and the amount actually issued, the character of the business which it is to transact in this state and designating its principal office in this state. The remarks of Mr. Justice Woods in Cooper Manufacturing Co. *v.* Ferguson apply directly to the language contained in this section. A statement of the amount of capital stock authorized and the amount actually issued would be an appropriate requirement if the corporation were to engage in business in this state, but inapt so far as relates to a single isolated transaction. "The character of the business which it is to transact in this state" and the designation of its principal office in this state plainly imply the engaging in business in the sense in which that term was

defined in Hoagland *v.* Segur. The purpose of the certificate issued by the secretary of state is to authorize the corporation " to transact business in this state," and that officer is required to certify that the business is such as may be lawfully transacted by corporations of this state. These several provisions as applied to a single isolated transaction, like the one in question, would be inappropriate. A construction which would require the plaintiff, proposing to make this sale of coal and accept a guarantee of payment, first to file a statement of the amount of its capital stock authorized and the amount actually issued, the character of the business which it was to transact in this state, and to establish a principal office in this state, would be unreasonable. The section of the act which imposes under certain conditions on foreign corporations " doing business within this state" the same taxes, fines, penalties, license fees, &c., imposed on corporations of this state doing business in the other state, sheds a light on the meaning of the words " doing business in this state" in the preceding section. It would scarcely be contended that the plaintiff because of this isolated transaction would be liable to taxes and license fees, &c., which by the laws of Pennsylvania are exacted from New Jersey corporations doing business in that state. The section which provides that such a corporation shall not maintain any action in this state upon a contract made by it in this state must receive the same construction. The words of the section are " corporations so transacting business ; " that is, corporations transacting business for which a certificate from the secretary of state is by the preceding section made necessary.

The instruction of the trial court was correct, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GARRISON, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 12.

*For reversal*—None.