*36 Vroom.*     Goldmark v. Magnolia Metal Co.

ADOLPH GOLDMARK v. MAGNOLIA METAL COMPANY.     65  341
                                                70  606

Submitted July 6, 1900—Decided November 12, 1900.

1. A foreign corporation which confines its business within the state by which it is created and transacts no business in this state, cannot be brought within the jurisdiction of the courts of this state by service of process upon one of its officers.

2. While the courts of a state may not obtain jurisdiction over a foreign corporation by service of process in such a way as to give a judgment *in personam*, the jurisdiction of every state and government over property having its *situs* within its territory, to subject such property to the payment of the debts of the owner, is indisputable.

3. No distinction has been made in the construction of the Attachment act between a debt that arose within the state and one that arose out of the state.

4. An action in attachment may be maintained against a foreign corporation having no office or place of business in New Jersey, which transacts no business here, when the supposed cause of action arose outside of the state, and when such corporation owns real or personal property located within the state which has been attached.

5. The words "in all cases in which such writ may lawfully issue against an absconding or absent male," in the seventh section of the Attachment act, have relation to the character of the debt for which the writ shall issue, the object of the legislature being to put corporations not created or recognized by the laws of this state on the same footing as individuals who are debtors, and to make both classes subject to the writ of attachment.

6. The true doctrine is to place a corporation not created or recognized by the laws of this state on the footing of a non-resident individual, exempt from writ of foreign attachment only when it does business in this state and has officers residing in this state upon whom process can be served at their homes.

7. Where a foreign corporation owns property in this state and transacts business here, but has not complied with the requirements under which such corporations are allowed to transact business in this state, an attachment will lie against it. *Pamph. L.* 1896, *p.* 307. On the other hand, if the foreign corporation has complied with this statute, and designated an agent upon whom process against it may be served in the manner pointed out, the plain policy of this legislation would exempt such a corporation from liability to attachment.

8. When appearance is entered by the defendant without giving bond in a suit begun by attachment, the proceedings are converted by the defendant's appearance into personal action *sub modo*, and the judgment recovered will have the quality of a judgment *in*

*personam,* but the lien of the attachment will be preserved notwithstanding such appearance, with authority in the court to appoint an auditor with like power in all respects as if such appearance had not been entered.

On demurrer. On case certified from the Morris Circuit Court.

This suit was begun by attachment against the goods and chattels, rights and credits, moneys and effects, lands and tenements of the Magnolia Metal Company, in an action upon contract. The defendant appeared. The plaintiff thereupon filed his declaration containing the common counts. To this declaration the defendant pleaded the following plea:

"And the said defendant by John B. Vreeland, its attorney, comes and says that this court ought not to have or take further cognizance of the action aforesaid, because it saith that it the said defendant is not a corporation of the State of New Jersey, but is a corporation of the State of West Virginia, duly incorporated under the laws of said last-mentioned state, capable of suing and being sued only in the courts of said State of West Virginia, and that the said defendant at the time of the commencement of this suit by said writ of attachment, had not, and has not now, an office or place of business in the State of New Jersey, and did not then, and does not now, transact any business in the State of New Jersey, and that the said supposed causes of action and each and every of them (if any such exist) accrued to the said plaintiff out of the jurisdiction of this court, that is to say, at the city of New York, in the State of New York, and not at Morristown, in the said county of Morris, or elsewhere within the jurisdiction of this court; and this the said defendant is ready to verify, wherefore it prays judgment, whether this court can or will take further cognizance of the action aforesaid."

To this plea the plaintiff filed a demurrer, on which there was joinder.

Before DEPUE, CHIEF JUSTICE, and Justices LUDLOW, GUMMERE and FORT.

For the plaintiff, *Philemon Woodruff*.

For the defendant, *John B. Vreeland* and *George T. Werts*.

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. The argument of this case upon the demurrer having been brought on at the Morris Circuit, the judge certified the case to this court for its advisory opinion upon the following questions:

"*First.* May an action in attachment be maintained against a foreign corporation having no office or place of business in New Jersey, and which transacts no business here, when the supposed cause of action arose outside of the state, and when such corporation owns real or personal property located within the state which has been attached?"

A proceeding to recover a debt by attaching the property of the debtor was no part of the common law. It had its origin in the custom of London, and was adopted and modified by statute. Being a statutory proceeding in derogation of the common law, we must resort to the statute itself to ascertain its nature and effect. The statute provides for the issuing of writs of attachment against debtors who are absconding or who reside out of the state. The writ can issue only for a cause of action founded on contract and for an indebtedness in a fixed and certain sum, and not for unliquidated damages. The earliest statute on this subject was an act passed March 8th, 1798. *Pat. L., p.* 296; *Rev.* 1820, *p.* 355. That statute provided only for writs of attachment against absconding debtors or debtors residing out of the state. The act provided a complete method of procedure, substantially the same as the statute now in force. It did not authorize a writ of attachment against a corporation. On February 22d, 1839, a supplement to the act was passed, the second section of which is as follows: "That writs of attachment may be issued against any absconding or absent female,

or against any corporation or body politic not created or recognized by the laws of this state, in all cases in which such writ may lawfully issue against an absconding or absent male, any law, usage or custom to the contrary notwithstanding." *Pamph. L., p.* 63. This statute was inserted in the Attachment act in the revision of 1845 as section 43. In the revision of 1874 it was re-enacted as section 7. *Gen. Stat., p.* 99. Its language is so explicit as to leave no room for construction. It enacts that a writ of attachment may be issued against any corporation or body politic not created or recognized by the laws of this state. The additional words, "in all cases in which such writ may lawfully issue against an absconding or absent male," have relation to the character of the debt for which the writ shall issue, the object of the legislature being to put corporations not created or recognized by the laws of this state on the same footing as individuals who are debtors, and to make both classes subject to the writ of attachment. This was the construction given by Chief Justice Green to this act in *Phillipsburg Bank* v. *Lackawanna Railroad Co.,* 3 *Dutcher* 206.

The cases cited by the defendant to sustain its contention that this writ of attachment was unlawfully issued, namely, *Moulin* v. *Insurance Co.,* 4 *Zab.* 222; *S. C.,* 1 *Dutcher* 57; *Camden Rolling Mill* v. *Swede Iron Co.,* 3 *Vroom* 15; *National Condensed Milk Co.* v. *Brandenburgh,* 11 *Id.* 111, are not constructions of this statute. The suits in those cases were common law suits commenced by service of process of summons. In the case first cited it was held that "a corporation chartered by a state, which confines its business within such state, cannot be sued in a state where it has not established any office or transacted any business, by serving process on its president or other officer when accidentally present in such state." In the second case the suit was commenced by a summons served in compliance with the act of 1865. *Pamph. L., p.* 467; *Rev., p.* 193, § 88. The plea demurred to averred that the defendant at the time of the commencement of the suit, had not, and has not, any office or place of business in the State of New Jersey, and did not then,

and does not now, transact any business in the State of New Jersey, and that the supposed causes of action accrued to the plaintiff out of the jurisdiction of this court, to wit, at Philadelphia, in the State of Pennsylvania. The demurrer to the plea was overruled. In the course of his opinion Chief Justice Beasley used this language: "Upon general principles, and in the absence of *statutory innovations,* it is to be regarded as settled, in this state at least, that if a foreign corporation, at the time of the commencement of suit, does not do business, and has not any office or place of business in this state, the contract sued on not having been entered into in this state, such corporation, except by its own consent, cannot be brought within the jurisdiction of this or any court of this state." The case was decided upon common law principles applicable to a suit at common law. The statutory effect of innovations, such as our Attachment act, which gives a remedy against a foreign corporation having property in this state by proceeding, not against the corporation personally, but against its property *in rem,* is within the exception contained in the opinion of the Chief Justice. National Condensed Milk Co. *v.* Brandenburgh, is a restatement of the law in Moulin *v.* Insurance Co., and was a suit commenced by summons. In that case the contract was made in this state, and the defendant was summoned in accordance with the eighty-eighth section of the Corporation act. Hence it was held that the suit was not subject to a plea to the jurisdiction.

I agree entirely with the decisions in the cases last cited, that a foreign corporation which confines its business within the state by which it is created, and transacts no business in this state, cannot be brought within the jurisdiction of the courts of this state by service of process upon one of its officers. But that is not the present case. While the courts of a state may not obtain jurisdiction over a foreign corporation by service of process in such a way as to give a judgment *in personam,* the jurisdiction of every state and government over property having its *situs* within its territory is indisputable. In the case of *Pennoyer* v. *Neff, 5 Otto* 714; 723,

Mr. Justice Field uses this language: "The state, through its tribunals, may subject property situated within its limits owned by non-residents to the payment of the demand to its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens, and when non-residents deal with them it is a legitimate and just exercise of authority to hold and appropriate any property owned by such non-residents to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of the non-resident situate within its limits that its tribunals can inquire into that non-resident's obligations to its own citizens and the inquiry can then be carried only to the extent necessary to control the disposition of the property. If the non-resident have no property in the state, there is nothing upon which the tribunals can adjudicate." The seizure of the property of the defendant, under the proper process of the court, is the foundation of the court's jurisdiction. *Cooper* v. *Reynolds,* 10 *Wall.* 308.

No distinction has been made in the construction of the Attachment act between a debt that arose within the state and one that arose out of the state. The Attachment act confers the right to use the writ of attachment to any creditor, without limitation or qualification.

To the first question certified our answer is in the affirmative.

"*Second.* Will an attachment lie against a foreign corporation owning property in New Jersey and transacting business here, said business not being transacted under legislative authority of this state?"

The decision of this court in *Perrine* ads. *Evans,* 6 *Vroom* 221, it seems to me, is altogether pertinent to this subject. That was a writ of attachment issued against the defendant as a non-resident. The facts in the case were these: Perrine was in the possession of a planing and moulding mill in Jersey City, at which place he carried on his business. He was there daily, and remained there usually all day. His home

was in New York, where his wife boarded. He usually passed his nights in New York. He had no home or lodging-place in this state. A writ of attachment was issued against him as a non-resident debtor, and a motion to set aside the writ was denied by the court. In delivering the opinion of the court, Chief Justice Beasley said: "The defendant in the present suit was at his place of business in this state almost continually, and there can be no doubt that he could have been brought in court by the service of a summons personally upon him. But his legal, as well as his actual, place of abode was in the city of New York." The case involved a construction of that section of the Attachment act which authorized that proceeding against debtors "who reside out of this state." Commenting on the statute, the Chief Justice said: "If there is any fixedness of meaning in words, the description in this statute of 'debtors who reside out of this state' means debtors who have no abode in this state. In this connection the language used, as it seems to me, is indisputably clear, and the consequence is that there is no room for judicial construction. It is not asserted that there is anything in the context that throws doubt over the signification of the expressions, so that, in this instance, if this court can rightfully substitute 'present' for 'resident' in the section in question, an assertion is implied that, practically, the judicial control over statutes is unlimited. * * * I think the duty of the court is to interpret the language of the statute and carry it into effect. Reading the act, then, according to its letter, there appears to be no escape from the result that a debtor, to be exempted from liability to this process, must have an abode of some kind in this state. Mere presence in the state is no bar to the use of such process." The Chief Justice, referring to the doctrine that a foreign attachment cannot be issued where a summons can be served, said that the writ of attachment is not to be resorted to when the ordinary process of the law can be used, although the legal domicile of the defendant may be out of the state. *City Bank* v. *Merrit,* 1 *Gr.* 131; *Branson* v. *Shinn, Id.* 250; *Brunder* v. *Del Hoyo, Spenc.* 328; *Clark* v. *Likens,* 2

*Dutcher* 207. These, he said, were all cases where the defendant had an actual residence in the state, and the summons could have been served on the defendant by leaving a copy at his dwelling-house or usual place of abode. The Chief Justice places the *Phillipsburg Bank* v. *Lackawanna Railroad Co., supra,* in the same category. His language is: "It was adjudged in that case that this railroad company, although recognized to a certain extent by the laws of this state, was a foreign corporation, and therefore, in that respect, liable to attachment as a non-resident. But it appearing that this company carried on business and had an office in this state, and that the secretary and general superintendent resided here, it was further held that these circumstances exempted them from liability to this process. This result was clearly correct on the rule as above stated. A corporation that does business in this state, and whose officers, upon whom process can be served at their homes, reside here, may be reasonably said to be a resident of this state. The situation of such a foreign corporation is nearly similar to a person having an established abode in this state, whose legal domicile is eleswhere. In the case reported, process could at any time be served at the abode of the officers of the corporation resident here. The case goes no further than to lay down the correct doctrine that when a summons can be served at the dwelling-house, a foreign attachment cannot be sanctioned. This is precisely the same ground on which all the other cases rest." The decision in Perrine *v.* Evans was approved and followed in *Stout* v. *Leonard,* 8 *Vroom* 492.

The act of 1865, substantially re-enacted in 1875 as section 88 of the Corporation act, provides that in all personal suits or actions hereafter brought in any court of this state against any foreign corporation, process may be served upon any officer, director, agent, clerk or engineer of such corporation, either personally or by leaving a copy thereof at his dwelling-house or usual place of abode, or by leaving a copy at the office, depot or usual place of business of such foreign corporation. *Dill. Mun. Corp.* 94. Process may be served in any of the ways mentioned in this statute, and may be

valid and authorize a judgment *in personam* if the corpora-
tion transacted any business in this state. But we are now
dealing with the construction of the Attachment act. The
act authorizes an attachment against any corporation not
created or recognized by the laws of this state, without any
condition or qualification. It cannot be said, even with
plausibility, that the service of process against the corpora-
tion or any one of the individuals designated in section 88
of the Corporation act—say, for instance, an agent or clerk
of such corporation—should avail to supersede the precise
language of the act in authorizing a writ of attachment
against a corporation. Following the principle laid down
in Perrine *v.* Evans, and the opinion of Chief Justice Beasley
in that case, the true doctrine is to place a corporation not
created or recognized by the laws of this state on the foot-
ing of a non-resident individual, exempt from writ of foreign
attachment only when it does business in this state and has
officers residing in this state upon whom process can be served
at their homes.

The foregoing principle is subject to a qualification arising
out of legislation which prohibits foreign corporations trans-
acting business in this state except on compliance with certain
conditions imposed. This legislation is comprised in sections
97, 98 and 100 of the General Corporation act. *Pamph. L.*
1896, *p.* 307; *Dill. Mun. Corp.* 97, 99; *Delaware and Hudson
Canal Co.* v. *Mahlenbrock,* 34 *Vroom* 281. That statute
applies to all foreign corporations except banking, insurance,
ferry and railroad corporations. In section 97 it provides
that every foreign corporation, other than those excepted
from the act, before transacting any business in this state,
shall file in the office of the secretary of state a copy of its
charter or certificate of incorporation, attested, &c., and a
statement attested, &c., of its capital stock authorized and
the amount actually issued, and the character of the busi-
ness which it is to transact in this state, and designating
its principal office in this state, and an agent, &c., upon
whom process against such corporation may be served, &c.
The act then provides that upon the filing of such copy and

.statement the secretary of state shall issue to such corporation a certificate that it is authorized to transact business in this state. By section 100 it is provided that every foreign corporation transacting any business in any manner whatsoever, directly or indirectly, in this state, without having first obtained authority therefor, shall for each offence forfeit to the state the sum of $200, to be recovered with costs in an action prosecuted by the attorney-general in the name of the state. This legislation prescribes the conditions under which the foreign corporations comprised within the statute shall be allowed to transact business in this state. Such corporations not having complied with the statute are doing business within the state under a legislative interdict. They are, therefore, corporations not recognized by this state, and are disqualified from claiming that the business carried on by them in this state is lawfully transacted. Such corporations are not exempt from liability to attachment under the doctrine laid down in Perrine *v.* Evans; for it will be observed that the legislation above referred to was designed for the protection of the creditors of the foreign corporations. On the other hand, if the foreign corporation has complied with the statute, and designated an agent upon whom process against it may be served in the manner pointed out, the plain policy of this legislation would exempt such a corporation from liability to attachment. *Pamph. L.* 1896, *p.* 307.

The answer of this court to the second question certified must be gathered from what has been said on that subject.

*"Third.* If a foreign corporation appears before final judgment and accepts of a declaration in an action in attachment, is the effect thereof to so change the situation of the case as to make the proceeding an action *in personam* instead of an action *in rem,* and thereby vacate the attachment and destroy the lien thereof?"

Except with respect to the property attached the attachment has no effect, unless the defendant appears to the suit, in which case it becomes a proceeding *in personam.* If he do not appear the proceeding is *in rem,* and the court acts upon his property. *Schenck* v. *Griffin,* 9 *Vroom* 462, 465;

*Miller* v. *Dungan, 7 Id.* 21; *Thompson* v. *Eastburn,* 1 *Harr.* 100; *Haight* v. *Executors of Bergh,* 3 *Gr.* 183. If there be a personal appearance by the defendant, the suit becomes a personal action. But if, in the absence of an appearance, his property is attached and sold, it is essentially a proceeding *in rem,* and is governed by principles applicable to that class of cases. *Cooper* v. *Reynolds,* 10 *Wall.* 309. Where the defendant in attachment appears to the suit of any applying creditor, the court having obtained by such appearance jurisdiction of the defendant's person, a judgment recovered by such creditor, besides being an ascertainment of the amount due him on his claim presented under the attachment, will also have the quality of a judgment *in personam* at common law, upon which an execution may be issued and a levy made on the defendant's property. *Blatchford* v. *Conover,* 13 *Stew. Eq.* 205. "A judgment recovered by the plaintiff in a suit commenced by attachment, where the defendant appears to the suit without giving bond, has a twofold effect—first, the property, personal as well as real, seized and taken under the attachment, may be sold to satisfy the judgment; and secondly, a judgment recovered after such appearance has the force and effect of a judgment *in personam.* Without an appearance by the defendant the attachment proceedings are strictly *in rem,* and the judgment is available only against the property attached." *Davis* v. *Megroz,* 26 *Vroom* 427, 429.

It must be assumed from the form of the question certified that the defendant's appearance was pursuant to section 38 of the Attachment act without giving bond. The writ of attachment is a lien on the lands of the defendant from the time it was issued, and on the personal property from the time it was served. *Cummins* v. *Blair,* 3 *Harr.* 151. In sections 32 to 37, inclusive, provision is made for the appearance of the defendant in attachment upon giving bond either to the sheriff or to the plaintiff and the applying creditors, in which event the attachment is set aside and the property attached released, saving the lien on the real estate, or it may be entirely set aside and all the property attached released.

*Gen. Stat., pp.* 103, 105. Section 38, which was brought into the Attachment act March 1st, 1871, provides for an appearance by the defendant without giving bond. This appearance may be at the suit of the plaintiff or of any creditor or creditors under the attachment, and if the appearance be entered in the clerk's book and notice thereof given to the party in whose suit the appearance is entered within twenty days thereafter, then the statute provides that the suit shall proceed in all respects as if commenced by summons. It will be observed that in this section there is no provision for setting the attachment aside as there is in some of the preceding sections.

The appearance of a defendant under this section does not destroy the lien of the attachment upon either the real or personal property attached, for by the succeeding section it is enacted that in case of an appearance by virtue of the foregoing section the lien of the attachment shall continue, and proceedings by *scire facias* may be had against any garnishee, and the movable property attached shall remain in the custody of the sheriff, or his bailee, and be subject to the order and control of the court or the judge thereof, and the court or judge may, if occasion require, order the property sold as perishable, and appoint an auditor with like power in all respects as if no appearance had been entered. This section also provides that a judge of the court may discharge the lien of such attachment as to all or any part of the personal property attached upon four days' notice to all the parties interested, and upon the defendant giving bond, with securities, in such amount and in such condition as the judge may direct.

When an appearance is entered by the defendant, without giving bond, in a suit begun by attachment, the proceedings are converted, by the defendant's appearance, into a personal action *sub modo,* and the judgment recovered will have the quality of a judgment *in personam;* but the lien of the attachment will be preserved, notwithstanding such appearance, with authority in the court to appoint an auditor with like power in all respects as if such appearance had not been

entered.   The legal effect of sections 38 and 39 is to leave
the attachment suit and all proceedings under it precisely
as if no appearance had been entered, except that the claims
of the plaintiff and the applying creditors, instead of being
litigated before the auditor, shall be determined before the
court and a jury, the same as if the parties had commenced
suits therefor by summons.   After such an appearance the
suit proceeds *in personam,* the action remaining a proceed-
ing *in rem* as to the property attached.   *Blatchford* v. *Con-
over,* 13 *Stew. Eq.* 214, 215; *Jackson* v. *Johnson,* 22 *Vroom*
457, 461; *Connelly* v. *Lerche,* 27 *Id.* 95; *Hoppock's Execu-
tors* v. *Ramsey,* 1 *Stew. Eq.* 413, 418.

   To the third question our answer is that if a foreign cor-
poration appears before final judgment and accepts a declara-
tion in the attachment suit, the effect thereof is to convert
the suit into a personal action *sub modo;* that such appear-
ance supersedes the attachment so far as to enable the de-
fendant to have the claims of the plaintiff and applying
creditors litigated as if suit had been commenced by sum-
mons, but it does not destroy or impair in any way the lien
created by the attachment.