ROBERT CUNNINGHAM, CUSTODIAL RECEIVER FOR AUTO
MUTUAL INDEMNITY COMPANY, A CORPORATION OF
THE STATE OF NEW YORK, PLAINTIFF, v. BROCKWAY
FAST MOTOR FREIGHT, INC., C. AND C. CONVEY CO.,
J. FISHMAN & SON, INC., DONALD P. FLOWERS,
CHARLES GELLAK, GEORGE HARRIS, HARRISON MO-
TOR FREIGHT, DOING BUSINESS AS DELUXE TRANS-
PORTATION, CLARENCE LAARZ, L. & S. MOTOR LINES,
INC., RALPH MUELLER, MICHAEL PALMERE, JOHN
RUZILA, TRADING AS RUZILA'S EXPRESS, ALEXAN-
DER & BETTY SOJKA, DOING BUSINESS AS EAGLE
MOTOR LINES, CHARLES SZABO, JR., WALLINGTON
TRANSPORTATION CO., DEFENDANTS.

Decided January 8, 1940.

For the plaintiff, *David Cohn.*

For the defendants J. Fishman & Sons, Inc., and Harrison
Motor Freight, *J. Lewis Abramowitz.*

WOLBER, C. C. J.  This matter comes before me on a motion
made on behalf of defendants to strike the complaint herein
on an agreed state of facts.  I have received a memorandum
of law on behalf of the plaintiff and memoranda on behalf
of the defendants.  Although plaintiff was allowed by me to
file a further brief no later than Tuesday, December 26th,
1939, none has been filed with me.

The agreed state of facts shows that the Auto Mutual
Indemnity Company is a corporation organized under and
by virtue of the insurance laws of the State of New York.
This company had its principal place of business in New
York City.  It had no place of business in the State of New
Jersey and was not authorized to do business therein.  All
policies concerning New Jersey residents *were solicited in*

*New Jersey* and written and approved through either the New York or Philadelphia office of the Auto Mutual Indemnity Company. Said policies covered property located in the State of New Jersey.

On November 24th, 1937, the indemnity company was placed under the control of the Superintendent of Insurance of the State of New York. The superintendent was appointed for the express purpose of liquidating the assets of the indemnity company and conserving the same for the benefit of creditors, in conformity with the laws of the State of New York.

From that date on, the superintendent assumed and took over all business, property and assets of the indemnity company, and has continued to be in charge thereof for the purpose of liquidation.

On February 7th, 1938, a determination was made by the Superintendent of Insurance of the State of New York, that there were insufficient funds and assets with which to pay creditors and other liabilities of the Auto Mutual Indemnity Company. This determination was made in conformity with the laws and statutes of the State of New York. The deficiency which he found to be existing at that time has continued and still exists.

According to the statutes of the State of New York, the Superintendent of Insurance has the duty of making an assessment against all the policyholders of the indemnity company under such circumstances as were existing, in such amount as he deems necessary to cover the excess of proper liabilities over reasonable value of assets. Such determination is then to be pro-rated amongst all policyholders. After the determination is made and pro-rated with proper notice, given by mail as required by the statutes of New York, the determination and assessment, according to the statutes of New York, has the same effect as if a judgment in the original action brought in the court in which the special proceedings are pending, meaning the proceedings with respect to the liquidation of the Auto Mutual Indemnity Company.

The assessment properly and legally made was determined by the Superintendent of Insurance of the State of New York

to be forty per cent. of the amount of the indebtedness of each policyholder, due and owing to the indemnity company.

The assessment in the amount of forty per cent. was properly and legally made, notice thereof was given as provided in such cases, by an order to show cause entered on August 12th, 1938, wherein all complainants, that is, policyholders of the insurer, were required to pay such assessment of forty per cent. on or before September 19th, 1938.

Amongst the policyholders of the indemnity company were the defendants named in this action, all of whom are within the State of New Jersey. These defendants represent all those who were policyholders of the indemnity company in New Jersey, all of whom received copies of the rule to show cause of August 12th, 1938, wherein payment was demanded on said assessment on or before September 19th, 1938, by mail as required by the statutes of the State of New York, and all of whom have defaulted in the payment thereof.

The policies of insurance effected and written by the indemnity company on behalf of the defendants-assured were policies covering property located in the State of New Jersey. The policies issued to the defendants, J. Fishman & Son, Inc., and the Harrison Motor Freight, doing business as the DeLuxe Transportation, *were solicited of the said defendants in New Jersey and were for property located in the State of New Jersey.*

On November 18th, 1937, Robert Cunningham, plaintiff in this matter, was appointed temporary custodial receiver by Vice-Chancellor Vivian M. Lewis, to take over all the business, property and assets of the Auto Mutual Indemnity Company, which were to be found in New Jersey by the same court.

Defendant's motion to strike the complaint sets forth the following reasons:

(1) That the plaintiff, a mutual insurance company of the State of New York, was not at any time licensed to do business in the State of New Jersey and therefore cannot maintain this action, relying more specifically on sections 5 and 69 of the 1902 New Jersey Insurance law. *R. S.* 17:17-5 and 17:32-10.

It will be noted that in the 1937 *R. S.*, section 5 of the Insurance law will be found in part 1, Insurance Companies Generally, chapter 17, Formation; while section 69 will be found in chapter 32, Foreign Companies.

(2) That the complaint is vague and insufficient in that the statutes of the State of New York are not properly pleaded.

(3) That the complaint does not indicate or state that the plaintiff herein has authority to maintain this suit.

(4) That the assessment sued upon was not properly made, in that such a proceeding being in the nature of an action *in personam,* no jurisdiction was ever had by the New York officials over the herein defendants, as the latter were never properly notified; no service was made upon the herein defendants within the State of New York.

In *Delaware and Hudson Canal Co.* v. *Mahlenbrock,* 63 *N. J. L.* 281; 43 *Atl. Rep.* 978 (1899, Depue, J.), in construing section 97 of the Corporation act of 1896, requiring the filing of a statement in the office of the secretary of state by foreign corporations transacting business in this state, it was held that the statute does not apply where the foreign corporation, accepting an order for goods given to it by a resident of New Jersey, receives a guarantee executed in this state and mailed to the corporation at its home office and thereupon fills the order—the contract not being concluded in New Jersey.

Section 98 of our Corporation act of 1896 provided that until such corporation so transacting business in this state shall have obtained said certificate of the secretary of state it shall not maintain any action in this state upon any contract made by it in this state.

This case is an authority which would indicate that section 69 of our Insurance law does not apply to the instant situation because according to the agreed state of facts, while policies were solicited in New Jersey and covered property therein, they were written and approved through either the New York or Philadelphia office of the indemnity company. The indemnity company did not enter New Jersey by its agents and engage in the general prosecution of its ordinary business therein.

In *Stockley* v. *Perry* (*Essex County Circuit Court,* 1902, *Swayze, J.*), 26 *N. J. L. J.* 4, the receiver of a Pennsylvania mutual live stock insurance company sought to recover from the defendants an assessment for the proportion of said defendants of the unpaid liabilities of the company incurred while they were members thereof and while their insurance was in force. The agreement of each defendant, as set forth in the application signed by him, is "to pay all assessments levied upon me for the mortuary and expense funds as the same are called for and in the time prescribed by the company." The policy issued to each defendant also contained the following terms: "The insured agrees to pay any assessment that may be levied upon him from time to time for the mortuary or expense funds and within the time provided for in the notice of assessment."

In that case it was urged at the oral argument that the company cannot recover because of the provisions of section 69 of the Insurance act of 1902. *Pamph. L.* 1902, *p.* 434. Mr. Justice Swayze held that this act is clearly inapplicable, as the company had been decreed insolvent several years before the act was passed. The policies in question had been previously issued and the court said: "It is too clear for argument that this act could not apply."

It was further argued that the declaration did not show that the company was authorized to transact business in New Jersey. The court said the policies were Pennsylvania contracts, and enforceable in New Jersey under the rule of *Northampton Mutual Live Stock Insurance Co.* v. *Tuttle* (*Supreme Court,* 1878, *Van Syckel, J.*), 40 *N. J. L.* 476, unless subsequent legislation affects the company.

The court held that all subsequent statutes refer only to companies transacting business in New Jersey, and relying upon the case of *Delaware and Hudson Canal Co.* v. *Mahlenbrock, supra,* held that there was nothing to show that the company of which the plaintiff was receiver was transacting business in New Jersey within the meaning thus settled.

In answer to the bar of section 69 to this action by the plaintiff, reliance is had upon the opinion of Mr. Justice Brandeis in the United States Supreme Court on April 1st,

1935, in the case of *Broderick* v. *Rosner*, 294 *U. S.* 629; 55 *Sup. Ct.* 589. On November 17th, 1933, Broderick, as superintendent of banks of the State of New York, brought, in the Supreme Court of New Jersey, this action against five hundred and fifty-seven stockholders of the Bank of the United States, residents of New Jersey, to recover unpaid assessments levied upon them by him pursuant to law. Defendant moved to strike out the complaint on the ground, among others, that by reason of section 94b of the Corporation act of New Jersey (2 *Comp. Stat.* 1910, *p.* 1656), it failed to set out a cause of action enforceable in any court of this state. That section, first enacted March 30th, 1897, provides:

"No action or proceeding shall be maintained in any court of law in this state against any stockholder, officer or director of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, officer or director for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country, and no pending or future action or proceeding to enforce any such statutory personal liability shall be maintained in any court of this state other than in a nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties."

Broderick seasonably claimed that to sustain the asserted bar of the statute would violate article 4, section 1, of the Federal Constitution, which provides that "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," and the legislation of Congress enacted pursuant thereto. The trial court sustained the motion to strike out the complaint. *Broderick* v. *Abrams* (*Supreme Court*, 1934, *Parker, J.*), 112 *N. J. L.* 309; 170 *Atl. Rep.* 214; affirmed by the court of errors and appeals on opinion below, 113 *N. J. L.* 305; 174 *Atl. Rep.* 507 (1934, *P. C.*). Mr. Justice Brandeis held

that: "The power of a state to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard therein is subject to the limitations imposed by the Federal Constitution," and further stated that a state may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject-matter and the parties.

The court further held that the nature of the cause of action brought it within the scope of the full faith and credit clause, as the statutory liability sought to be enforced was contractual in character and the assessment was an incident of the incorporation. The subject-matter was peculiarly within the regulatory power of New York, as the state of incorporation.

In respect to the determination of liability for an assessment, the New Jersey citizens submitted themselves to the jurisdiction of New York, and the Supreme Court said:

"Obviously recognition could not be accorded to a local policy of New Jersey, if there really were one, of enabling all residents of the state to escape from the performance of a voluntarily assumed statutory obligation, consistent with morality, to contribute to the payment of the depositors of a bank of another state of which they were stockholders."

It was there further held that the fact that the assessment was made under statutory direction by an administrative officer does not preclude the application of the full faith and credit clause, and that where a state has had jurisdiction of the subject-matter and the parties, obligations validly imposed upon them by statute must be given full faith and credit by all the other states.

The court finally said that it is sufficient to decide that, since the New Jersey courts possess general jurisdiction of the subject-matter and the parties, and the subject-matter is not one as to which the alleged public policy of New Jersey could be controlling, the full faith and credit clause requires that this suit be entertained, and reversed the New Jersey judgment against plaintiff.

I am of the opinion that if there were nothing more in this case than the effort to bar the action because of the provisions

of sections 5 and 69 of the Insurance law, the defendants' motion to strike the complaint should be denied, but there is an additional provision of our Insurance law to be considered by me in the determination of this motion.

Section 88 of our Insurance law (*R. S.* 17:17-12), provides that no person by himself, or by his representative of whatsoever designation, or such representative, shall *solicit, negotiate* or effect any contract of insurance of any kind, or sign, deliver or transmit by mail or otherwise, any policy on any property, or receive any premium, commission, fee, or other payment thereon, or in any manner, directly or indirectly, transact the business of insurance of any kind whatsoever, within this state, unless specifically authorized under the laws of this state, and that any person violating any of the provisions of this section shall be guilty of a misdemeanor.

Section 58 of our Insurance law (*R. S.* 17:32-1), provides that any insurance company formed by authority of another state or foreign government may be admitted to transact in this state any class or classes of insurance authorized by law to be transacted by an insurance company of this state.

Section 59 of our Insurance law (*R. S.* 17:32-2), provides that no such company shall be admitted until it

(a) Files in the department a certified copy of its charter or certificate of organization, and a statement of its financial condition and business;

(b) Satisfies the commissioner that it is fully and legally organized under the laws of its state to do the business it proposes to transact; that its condition or methods of operation are not such as would render its operation hazardous to the public or its policyholders in this state; that, if a mutual company, it has certain net cash assets;

(c) Constitutes, by a duly executed instrument filed in the department, the commissioner and his successor in office its true and lawful attorney, upon whom all original process in any action or legal proceeding against it may be served; and

(d) Obtains from the commissioner a certificate that it has complied with all the requirements of the law applicable to it and is authorized to transact business in this state.

In 1927, Mr. Justice Brandeis, who subsequently delivered the opinion of the United States Supreme Court in *Broderick* v. *Rosner, supra,* wrote the opinion in *Bothwell* v. *Buckbee-Mears Co.,* 275 *U. S.* 274; 48 *Sup. Ct.* 124. In that case the plaintiffs, as receivers of a Maryland mutual insurance company, sued the defendant, a Minnesota corporation, in Minnesota for the amount of an assessment made upon it pursuant to a policy for "strike insurance" issued by the company. The defendant urged that the company, and hence its receivers, cannot maintain an action in a court of Minnesota because it did not, before writing the policy, comply with the provisions of the Minnesota law relating to foreign insurance companies doing business within the state. The statutes of Minnesota provided that a foreign insurance company shall not do business within the state unless it secures a license so to do, somewhat substantially similar to the provisions of our own statutes. The statutes further require that all persons engaged in the *solicitation* of applications of insurance shall be licensed, and they declared specifically that it shall be unlawful for any person to solicit or make or aid in the soliciting or making of any contract of insurance not authorized by the laws of the state, and that any person, firm or corporation not complying with the requirements as to the licensing of agents and solicitors shall be guilty of a misdemeanor.

In that case it was stipulated that the company did not comply with the requirements of the Minnesota law, and that the contract was effected by the company's sending a representative into the state who solicited the insurance there, by the defendant's filling out in Minnesota one of the blank forms for application distributed by the company's agent there, and by the defendant's then mailing it, together with a check for the first premium, to the company's office in Maryland, upon receipt of which the policy was signed by the company in Maryland and mailed to the defendant.

Mr. Justice Brandeis said that a contract of insurance, although made with a corporation having its office in a state other than that in which the insured resides and in which the interest insured is located, is not interstate commerce. The

parties had the constitutional right to make in Maryland a contract of insurance despite a prohibition of the Minnesota law. But the company, a foreign corporation, had no constitutional right to solicit the insurance in Minnesota by means of an agent present within that state. For the act of solicitation there the state might have punished the agent, and also the company as principal. He further said:

"As the contract was not a later independent act, but grew immediately out of the illegal solicitation, and was a part of the same transaction, being inseparably tied to it by the use of the application blank illegally distributed, the contract was tainted with the illegality. * * * Because of such taint the state, under rules of general application, would have had the right to refuse to enforce it, although made in Maryland, even if it had been wholly unobjectionable in its provisions."

In the Bothwell case it also appeared, which does not appear in the agreed state of facts here, that the contract was otherwise obnoxious to the Minnesota law because it required the company to perform in Minnesota acts which it was prohibited from doing there. The company agreed to defend, on behalf of the insured, all suits brought by striking employes, and also covenanted to indemnify the insured for "direct loss of average daily net profits and fixed charges" due to strikes. The contract also reserved to the receiver the right to inspect the plant and books of account and papers of the business and the right to interrogate persons connected therewith, which of course had to be done in Minnesota, and all of which things were the activities of the insurance business, which the company was prohibited by valid statutes from doing within the state.

In conclusion Mr. Justice Brandeis said: "Under rules of law generally applicable a state may refuse to enforce a contract which provides for doing within it an act prohibited by its laws."

While the *Broderick* case, *supra,* held that for the states of the union the constitutional limits imposed by the full faith and credit clause abolished in large measure the general principle of international law by which local policy is permitted

to dominate rules of comity, that case is readily distinguishable from the *Bothwell* case and can therefore be readily distinguished from the instant case, which I think must be controlled on its facts by the *Bothwell* case.

In *Fay* v. *Brewster* (*Supreme Court,* 1883, *Van Syckel, J.*), 45 *N. J. L.* 432, an information in debt was filed to recover the penalty for violation of a supplement to the insurance laws of this state, passed March 8th, 1877, substantially in the language of our present section 88 of the insurance law. *R. S.* 17:17-12. The information was against a person who solicited from a New Jersey resident a contract of life insurance with a Connecticut company and delivered the contract of insurance to him at a time when the insurance company had not complied with the requirements of our insurance laws. The proof in the case was full that said company was not incorporated under the laws of this state and had not complied with the provisions of our insurance laws. That was held to be sufficient, and the court concluded that the proof was complete that the defendant committed the act against which the penalty of the statute is denounced.

In *Columbia Fire Insurance Co.* v. *Kinyon* (*Supreme Court,* 1874, *Van Syckel, J.*), 37 *N. J. L.* 33, a foreign fire insurance company chartered by the State of Pennsylvania brought suit to recover the amount of certain alleged assessments made on the deposit or premium note given by the defendant for his policy. The principal question involved was as to the force of our Insurance acts of 1860 and 1867. The matter came up on a demurrer to plaintiff's replication. Mr. Justice Van Syckel said that the evident purpose of our acts was to put under certain regulations the doing of business in this state by foreign insurance companies, and that this object was accomplished by prescribing the conditions under which they may effect insurances through agencies established here; that no intention was manifested of an attempt to restrain or control the business of these corporations, so far as it is transacted without the limits of this state, or to give our legislation any extra territorial effect. Comity requires us to enforce a contract made in another state, and valid there, unless it is clearly prohibited by some

provision of these enactments. Mr. Justice Van Syckel further said:

"It may, therefore, be conceded, not only that our legislature may put under restraint business transacted in this state by a company created by the law of another state, but, in the exercise of their plenary power, may limit, if they cannot deny, the right of such company to sue in our courts. Although it would be competent, by legislation, to invalidate in our courts an insurance contract made in good faith in another state on property located here, it would be so contrary to the comity which has been observed between the states, that such an intention will not be imputed to the law maker, unless the language used so clearly expresses that purpose as to bear no other reasonable interpretation."

Under the existing statutes, a foreign company was inhibited from transacting any business connected with insurance purchased in this state through agencies established here without conforming with the requirements of our laws and the penalties denounced by the act were aimed only at the authorized agent acting in this state. Holding that there was nothing in our state which will make the case an exception to the general rule, that the law of the place where a contract is made or to be performed, is to govern as to the nature, validity, construction and effect of such contract, being valid in such a place, it is to be considered equally valid everywhere. It will be enforced here, not *proprio vigore,* but *ex comitate.*

The learned justice held that a contract of insurance made out of this state on property here situate is valid. He held that the regulations of our insurance laws are not merely for the purpose of revenue, leaving unimpaired the contract made in violation of them.

He considered the act of April 15th, 1846, imposes a tax upon foreign companies which establish agencies in this state, and held that the principal object of this statute was to deprive them of the advantage they would otherwise have over our home corporations.

The subsequent acts of 1860 and 1867, he said, manifests very clearly the more important purpose of protecting the

public against imposition, which might otherwise be practiced by wholly irresponsible companies, by requiring that the foreign companies shall exhibit under oath and file with our secretary of state a statement as to the sound, well invested capital over all claims and liabilities, before authority can be had to appoint agents. The court said:

"The agent, therefore, who acts without due authority, is not only liable to the penalty in such case prescribed, but the contract made in contravention of the law is itself void, so far as concerns the right of the foreign principal to sue upon it."

In the instant case I conclude, under the authority of the *Bothwell* case, that since the solicitation of the defendants in New Jersey with relation to their property located here on behalf of the foreign insurance company, under the agreed facts, was a violation of our criminal law, this court should refuse the enforcement of the contract against the defendants.

Defendants' motion to strike the complaint here will therefore be granted, without costs. No costs are allowed because the plaintiff here is a temporary custodial receiver, appointed by the Court of Chancery of our state.

I will sign a rule in conformance with the above determination when it is presented to me.