107 N.J. Super. 296 (1969)
258 A.2d 146
LANCE INDUSTRIES, INC., PLAINTIFF,
v.
EASTERN SPECIALTIES COMPANY, INC., CYMCO, INC., RICHARD SCHOULTZ, RICHARD NIKERSON, AND DONALD AULD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
October 23, 1969.
*297 Mr. Michael M. Rosenbaum appeared for plaintiff (Messrs. Budd, Larner, Kent, Gross and Picillo, attorneys).
*298 Mr. John J. Sullivan attorney for defendants Eastern Specialties Co., Inc., Richard Schoultz, Richard Nickerson and Donald Auld. (Mr. John J. Jobes, of counsel).
Mr. Charles W. Symanski appeared for defendant Cymco, Inc. (Messrs. Symanski & Panucci, attorneys).
MOUNTAIN, J.S.C.
Plaintiff is a Delaware corporation and defendant Eastern Specialties Company (Eastern) is a Massachusetts corporation. Neither has received a certificate of authority to transact business in this State pursuant to N.J.S.A. 14A:13-4. At the instance of plaintiff a writ of attachment issued directed to certain machinery of considerable value allegedly owned by Eastern, but held, within this State, in the possession of defendant Cymco, Inc. Eastern now moves to vacate the writ.
It is well settled that the statute, N.J.S.A. 2A:26-1 et seq., is the sole source of the remedy of attachment and that the procedure to be followed in pursuit of the remedy is set forth in R. 4:60. Tanner Associates, Inc. v. Ciraldo, 33 N.J. 51, 53 (1960).
N.J.S.A. 2A:26-2 enumerates the several occasions when a writ of attachment may issue. In this case no fraud is alleged and it is not denied that Eastern has an office in New Jersey where process by way of summons may be served. Plaintiff, in arguing that the issuance of the writ was proper, places sole reliance upon subparagraph (e) of the statute last cited which authorizes the issuance of a writ "[w]here the defendant is a corporation created by the laws of another state but authorized to do business in this state and such other state authorizes attachments against New Jersey corporations authorized to do business in that state." It argues that the words, "authorized to do business in this state," should be interpreted as referring not solely to those corporations that have complied with the requirements of N.J.S.A. 14A:13-4 but also to all other corporations actually doing business here, even though they have not *299 secured certificates of authority. If this broad interpretation is not adopted, the argument continues, the extraordinary remedy of attachment will be available against foreign corporations that have complied with our law but not against foreign corporations that have disregarded it. The Legislature could not, the argument concludes, have intended so anomalous and unjust a result.
The modern history of our legislation with respect to the remedy of attachment must be examined insofar as it concerns the availability of this remedy against foreign corporations. The Attachment Act of 1901 provided that "[a]ttachments may issue against * * * corporations not created or recognized as corporations of this state by the laws of this state. * * *" L. 1901, c. 74. "Recognition" resulted only from the foreign corporation securing a certificate of authority to do business within New Jersey. Actually doing business or maintaining an office in the absence of a certificate was not sufficient. The law was so understood at the time of this enactment. Goldmark v. Magnolia Metal Co., 65 N.J.L. 341, 346, 350 (Sup. Ct. 1900). During the following years our courts continued to hold that a foreign corporation was exempt from attachment only if it obtained a certificate of authority to do business within the state. The fact that it was actually doing business in New Jersey and that it was amenable to service of process within the State would not defeat the remedy of attachment where no certificate of authority had issued. Pan American, etc., Corp. v. Fried, etc., 16 N.J. Misc. 225, 229 (Cir. Ct. 1938). Mellor v. Hartford, Inc. 106 N.J.L. 574 (E. & A. 1929), suggesting a contrary doctrine, was apparently not thought to alter the rule. See Stocker v. Duro Co., 9 N.J. Misc. 439 (Sup. Ct. 1931).
In any event, the comprehensive revision of the Attachment Act embodied in L. 1939, c. 207 left the matter free from doubt. It provided, among other things, that "[a]n attachment may issue against * * * (b) Corporations not created *300 by the laws of this State and not authorized to do business in this State." This would seem to have been a codification of the law as it then stood; the test of exemption from attachment with respect to a foreign corporation was to be determined by its having secured or not having secured a certificate of authority. Presence of the corporation in the State, of such a nature as, by the service of process, to create in personam jurisdiction within federal requirements of due process, was not to be the criterion.
The same act (L. 1939, c. 207) introduced for the first time the legislative prototype of the statute we are here considering. A writ of attachment might issue against "[c]orporations not created by the laws of this State but authorized to do business in this State, unless in any case the laws of the State in which such a foreign corporation is created do not permit attachments against corporations created by the laws of this State when authorized to do business in such foreign State."
So the law stood until the Legislature completely revised Title 2 by the enactment of Title 2A. L. 1951, c. 344. In this revision is to be found the Attachment Act as it now stands. N.J.S.A. 2A:26-1 et seq. The section of the act of 1939 first above quoted, permitting attachment against foreign corporations not authorized to do business in this State, was not re-enacted. On the other hand, the provision permitting attachment against foreign corporations authorized to do business in New Jersey provided a similar remedy was available against New Jersey corporations authorized to do business in the state of incorporation of the foreign corporation was retained but the language was recast. N.J.S.A. 2A: 26-2(e).
Thus it seems clear that in 1951 the Legislature intended to change the law. Generally speaking, in the absence of fraud the remedy of attachment is reserved for those cases where a creditor may be able to reach his debtor's property located within the jurisdiction, although unable to effect personal service upon which a judgment in personam *301 might be based. The earlier New Jersey rule, permitting attachment to issue against a foreign corporation which had no certificate of authority but which could be personally served, was a departure from this traditional doctrine which the Legislature apparently decided to abandon. There seems, indeed, little reason to permit a creditor to attach goods of his debtor when he is able to pursue a more normal remedy by effecting personal service and proceeding, if his claim has merit, to a general judgment.
Accordingly, I believe the statute should be read to mean exactly what it says. N.J.S.A. 2A:26-2(e) is really retaliatory legislation and nothing more. The Legislature has apparently concluded that it is preferable to limit the remedy of attachment with respect to foreign corporations to instances where in personam jurisdiction is not attainable. If, however, other states permit attachment of the goods of duly qualified New Jersey corporations, then New Jersey, by way of retaliation, will deviate from its general rule to permit attachment with respect to foreign corporations duly authorized to do business in this state. Foreign corporations doing business in New Jersey without a certificate of authority will be governed by the usual rule.
It is further urged by the plaintiff that N.J.S.A. 14A:13-2(3) may be invoked to support the issuance of the writ. This statute states that "[a] foreign corporation which transacts business in this State without a certificate of authority under this act shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a foreign corporation procuring such certificate of authority." Eastern denies that it is doing business in New Jersey, although admitting it may be served here, and the conflicting allegations in the respective affidavits leave the matter in doubt. Furthermore, it is unlikely that Title 14 A was intended to enlarge the application of N.J.S.A. 2A:26-2(e).
The writ of attachment will be vacated.
*302 The argument of Eastern that the action should be dismissed on the ground of forum non conveniens is clearly without merit. The machinery in which the parties claim varying and conflicting interests is located here and has to a large extent been built and assembled here. Many of the witnesses live in New Jersey. It would, indeed, be quite difficult to try the case anywhere else. The facts which move a court to decline jurisdiction for this reason do not appear to be present. Gore v. United States Steel Corp., 15 N.J. 301 (1954), cert. den., 348 U.S. 861 75 S.Ct. 84, 99 L.Ed. 678 (1954); Starr v. Berry, 25 N.J. 573 (1958).
Plaintiff has additionally sought a temporary restraint with respect to defendants' use of the machinery in question. Many of plaintiff's contentions have been specifically denied under oath. It is not entitled to the restraint sought.