117 N.J. Super. 146 (1971)
283 A.2d 907
BOZZUTO'S INC., A CONNECTICUT CORPORATION, PLAINTIFF-APPELLANT,
v.
FRANK KANTROWITZ & SONS, INC., A NEW JERSEY CORPORATION, FRANK KANTROWITZ, DAVID KANTROWITZ, ARTHUR KANTROWITZ, AND CLYDE THOMAS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 13, 1971.
Decided December 3, 1971.
*147 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Allan Maitlin argued the cause for appellant (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. Irving Vichness argued the cause for respondents Kantrowitz (Mr. Paul J. Vichness on the brief; Messrs. Hood, Mintz & Vichness, attorneys).
Mr. James E. Davidson argued the cause for respondent Clyde Thomas (Messrs. Farrell, Curtis, Carlin & Davidson, attorneys).
The opinion of the court was delivered by FRITZ, J.A.D.
The sole issue presented by this appeal is whether a foreign corporation, not qualified to do business in New Jersey pursuant to statutory mandate, may seek affirmative relief in an action at law in conjunction with its defense against the claim of another. The question is apparently of first impression in New Jersey and requires us to consider N.J.S.A. 14A:13-11 toward the end of ascertaining the legislative intent in this regard.
Plaintiff Bozzuto's Inc., a Connecticut corporation not having a certificate of authority to do business in New Jersey pursuant to N.J.S.A. 14A:13-3, brought suit in contract against defendants Kantrowitz and Thomas. Thomas counterclaimed against plaintiff and crossclaimed against Kantrowitz. On defendants' motions the trial court held that summary judgment was available to defeat plaintiff's claim on the theory that the nonqualifying plaintiff doing business in New Jersey was statutorily enjoined by N.J.S.A. 14A:13-11 from the maintenance of the action.[1] Entry *148 of judgment was withheld to afford plaintiff an opportunity to qualify. Cf. Menley & James Laboratories, Ltd. v. Vornado, Inc., 90 N.J. Super. 404, 414 (Ch. Div. 1966). It determined not to do so. Conceiving at this juncture that defendant Thomas (whose counterclaim and crossclaim remained) was the real plaintiff seeking relief against Bozzuto and Kantrowitz, plaintiff moved to dismiss the Thomas claim (apparently on the ground that the dismissal of plaintiff's claim should have ended the entire action), or, in the alternative, for leave to "counterclaim" against Thomas and "crossclaim" against Kantrowitz. These motions were denied.
The occasional denomination in briefs of plaintiff's claim as a "counterclaim" in the present procedural posture causes us to eschew at once a determination based on pleading semantics. Cf. R. 4:5-4 (last sentence). The question is as we stated it at the outset, regardless of the label chosen for the claim. Additionally, it is to be noted that plaintiff's motion to be permitted to crossclaim as aforesaid specifically sought the right to file "an affirmative claim" and indeed endeavored to reassert the claims of the dismissed complaint.
The right of access to our courts is among the privileges of foreign corporations properly subject to regulation by our Legislature. In this respect N.J.S.A. 14A:13-11 has been enacted and governs. It is to this statute we look:
14A:13-11
(1) No foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any court of this State, until such corporation shall have obtained a certificate of authority. * * *.
(2) The failure of a foreign corporation to obtain a certificate of authority * * * shall not prevent such corporation from defending any action or proceeding in any court of this State.
Where a statute conveys the legislative intent by language having a clear and explicit meaning, construction or interpretation is not only unnecessary, but improper. Duke *149 Power Co. v. Patten, 20 N.J. 42, 49 (1955). We view the statute under consideration as having such a plain meaning. Subsection (1) clearly proscribes the maintenance of any action or proceeding of any kind in any court of this State by a foreign corporation transacting business here until it obtains a certificate of authority. A clearer expression and a more extensive limitation would be hard to formulate. A single exception is engrafted on this broad prohibition by subsection (2): the right to defend against any action or proceeding in any court is preserved.
We are satisfied that the employment of such unqualified, direct terms to define the absolute limitation on nonqualifying foreign corporations with respect to access to our courts, except for the express, clearly limited purpose of defending an action, plainly manifests a purpose to deny access except as necessary to defend against an action by another. In view of the broadness of the exclusion of subsection (1) and the precise exception of subsection (2), we are of the firm conviction that had the legislature intended to permit any affirmative claim, albeit in the nature of a counterclaim, it would have said so.
While such a holding makes resort to principles of statutory construction unnecessary, reassurance as to the soundness of our holding appears in such an effort.
Reference to the prior statute (see State v. Frost, 95 N.J. Super. 1, 3-4 (App. Div. 1967)) conduces to the view that the Legislature intended the broad prohibition we have found. Before the enactment of N.J.S.A. 14A:13-11, the limitation was far less restrictive:
Until such corporation so transacting business in this state shall have obtained such certificate of the secretary of state, it shall not maintain any action in this state upon any contract made by it in this state. [R.S. 14:15-4]
No effort to revise this proscription or to expand it generally appears. Rather, with the general revision of the Corporation *150 Act, effective January 1, 1969, the sweeping prohibition of the Model Business Corporation Act was adopted, essentially verbatim in this regard.[2] Had the Legislature intended to permit affirmative action by a nonqualifying corporation or, as a matter of fact, any conduct other than the defense against an action by another, the opportunity existed most recently with the general revision. Additionally, we believe that the obvious difference in degree between the prohibition of R.S. 14:15-4 and N.J.S.A. 14A:13-11 must necessarily have alerted the lawmakers to that opportunity in this area. Their adoption of the precise and broad Model Act language convinces us that the confinement to defending was advertent and unqualified.
The Commissioners' Comments, provided with the report of the Corporation Law Revision Commission, and said in its report to have been submitted in the hope that they "will prove a useful tool in statutory construction," support this view. After referring to the "limited disability to sue" imposed by the prior statute, R.S. 14:15-4, the note appears that, "The disability to sue has been broadened * * * to bar suit by the non-qualifying foreign corporation on any claim or demand."
Reference to N.J.S.A. 14A:13-3 in our search for meaning from statutes in pari materia (see Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287, 297 (1949)) demonstrates that the Legislature recognized that the defense of an action is a limited concept, embracing only one discrete phase of litigation, and different from maintaining or otherwise participating in an action. In exclusions from conduct which constitute transacting business, the Legislature included:
*151 (2) (a) maintaining, defending or otherwise participating in any action or proceeding, whether judicial, administrative, arbitrative or otherwise * * *. [N.J.S.A. 14A:13-3][3]
The recognition therein implicit of the difference between the maintenance of an action and a defense further persuades that the intention of N.J.S.A. 14A:13-11 was to limit against affirmative claims of any kind.
Considerations of essential fairness are supportive. In order to sue in our courts, domestic or qualifying foreign corporations must submit themselves to certain disabilities and obligations. It seems essentially unfair that a nonqualifying corporation should gain that access by virtue of a relationship with another sufficiently unsatisfactory that it is being sued. While the hypothetical situation is admittedly improbable, the inequities inherent in such a rule might well be demonstrated by assuming a nonqualifying corporation, subject to service here, engaged in a complex integrated contract with a New Jersey corporation. Intentionally risking breach on a minor section of the contract and inviting suit would be available as a gambit to permit then a "counterclaim" on the major portion of the contract  all without subjection to the corporation act sanctions and duties imposed upon the domestic corporation.
Plaintiff brings to our attention three cases said to constitute authority to the contrary: J.R. Alsing Co. v. New England Quartz & Spar Co., 66 App. Div. 473, 73 N.Y.S. 347 (App. Div. 1901), aff'd o.b. 174 N.Y. 536, 66 N.E. 1110 (Ct. App. 1903); James Howden & Co. of America, Inc. v. American Condenser & Engineering Corp., 194 App. Div. 164, 185 N.Y.S. 159 (App. Div. 1920), aff'd o.b. 231 N.Y. 627, 132 N.E. 915 (Ct. App 1921); Burley Newspapers, Inc v. Mist Publishing Co., 90 Idaho 515, 414 P.2d *152 460 (Sup. Ct. 1966). Each of these cases dealt in part at least with a statutory prohibition against an action on a contract or agreement, and the bar thus legislatively decreed was limited to this circumstance. (The New York cases also considered a similar but more extensive statutory prohibition within its tax laws. This tax statute was conceded to be "construed strictly in favor of the taxpayer.") Such a limited abridgement of the right of a nonqualifying corporation to sue would seem to constitute legislative acquiescence in at least an implicit right to access to the courts under other circumstances. But these cases are readily distinguishable. The statutes therein concerned bore a marked resemblance to our prior statute, R.S. 14:15-4. Our present statute contains no circumscription to its bar against the maintenance of "any action or proceeding" by the nonqualifying corporation.
We believe a further significant distinguishing characteristic of the New Jersey statute, as contrasted with the statutes considered in the cited cases, is the fact that here, unlike the others, the Legislature has said not only what the foreign corporation may not do, but also what it may do, i.e., defend. We believe such additional consideration constitutes words of limitation, not present in the Idaho or New York statutes, and all the more meaningful in their expression in view of the fact that due process considerations may well require the allowance of a defense without particular statutory enunciation in any event. 17 Fletcher, Cyclopedia of Private Corporations (rev. vol. 1960), § 8535 at 789.
The significance of such an expression is apparent from Alsing, supra:
The defendant, having been brought into court and thus made to defend, should be allowed, unless there is a distinct provision to the contrary, not only to defend, but also to litigate any question arising out of the transaction that has been made the basis of the plaintiff's complaint. [73 N.Y.S. at 350; emphasis added] *153 We view the specific allowance of a defense, after the broad general prohibition, as being a "distinct provision to the contrary" opposing any conduct other than a defense.
Burley turns in part upon the public policy declared in Idaho:
The aim of the provisions [of the qualifying statutes including the designation of a statutory agent for services of process and the prohibition against suit upon a contract otherwise] is to protect the right of Idaho citizens to sue foreign corporations in Idaho. They are not intended to prohibit or discourage foreign corporations from doing business in this state. In fact the legislature has declared the policy to be the encouragement of foreign corporations to engage in business in Idaho. [Statutory citation omitted] [414 P.2d at 462]
We are satisfied that the public policy of New Jersey, in this present day, is not so much to protect and attract foreign corporations and encourage their invasion of New Jersey, however laudable those purposes may be, as it is "to give full recognition to the rights of creditors," and "to offer a favorable business climate for the incorporation of business enterprises." Corporation Law Revision Commission, Report. We fail to see how an indulgent relaxation of qualifying requirements and of sanctions for failure or refusal to comply in this regard will encourage either of these pronounced ends.
Nor are we here impressed by the assertion in Burley that "Equity requires that if part of a contract is to be enforced * * * the entire contract, which is valid, also should be enforced, including the obligations of the plaintiff." While it is inescapable that enforcement of the rule here declared might result in apparent inequities, it is to be observed that if such inequities result, they are the product of the foreign corporation's own inactivity. With specific respect to the circumstances of the present case, it should be noted that a full opportunity was afforded plaintiff to qualify  a simple procedure, N.J.S.A. 14A:13-4  and the opportunity *154 was consciously rejected. The Sovereign conscience is not likely to shy from the sight of self-inflicted wounds.[4]
On the other hand, a statute, Vernon's Ann. Civ. St. Tex. art. 1536, prohibiting the maintenance of "any suit or action, either legal or equitable, in any Court of this State upon any demand, whether arising out of contract or tort" by a foreign corporation unless it "had filed its articles of incorporation under the provisions of this Chapter," has been held to prohibit, by its "plain wording," even a counterclaim (there denominated a "cross action"). Hightower Petroleum Corp. v. Story, 236 S.W.2d 679 (Tex. Ct. Civ. App., 1951).
The simple fact is the law requires a foreign corporation to procure a certificate of authority before it may lawfully transact business in this State. We recall no other field in which wilful inattention to the law invokes sympathetic treatment. That the Legislature intended no such mollycoddling may be seen at a glance in such companion sections as N.J.S.A. 14A:13-11(3) where, as noted in the Commissioners' Comments, "in addition" language preserves, along with specific monetary sanctions of the subsection, any other liabilities imposed by New Jersey law; and N.J.S.A. 14A:13-12 where the extraordinary injunctive remedy against violation is made available in a summary action, this, too, cumulative with other grounds for injunctive remedy.
Affirmed.
NOTES
[1] At this motion plaintiff argued that it was not "transacting business" in New Jersey, but the issue was apparently determined adversely to plaintiff. Error in that determination has not been raised on this appeal, and we presume the argument has been abandoned.
[2] The word "suit" is omitted from the phrase "action, suit or proceeding" in the Model Act. § 117. We see no significance in this omission particularly in view of the adoption by our courts, prior to 1969, of "action" as a comprehensive word of art. R. 4:2-1, 4:2-2.
[3] Needless to say, this exclusion does not authorize such conduct by a nonqualifying corporation, especially in view of the restrictions of N.J.S.A. 14A:13-11; it merely exempts it from a charge of "transacting business" on this account.
[4] In passing, we observe the natural tendency in Alsing  upon which decision Howden and Burley in large part, depended  to empathize with the foreign corporation "having been brought into court and thus made to defend," and therefore to permit its litigation of "any question arising out of the transaction that has been made the basis of the plaintiff's complaint." The situation here does not conduce to the same degree of sympathy. Here the nonqualifying corporation initiated the litigation in the face of apparent statutory prohibition, and then declined to qualify.