AMERICAN EXPORT LINES, INC., et al., Plaintiffs,

v.

J & J DISTRIBUTING CO., Defendant.

AMERICAN EXPORT LINES, INC., et al., Plaintiffs,

v.

REITMAN INDUSTRIES, INC., Defendant.

Civ. Nos. 77–2618, 77–2619.

United States District Court, D. New Jersey.

May 9, 1978.

Scarpone & Edelson, James A. Scarpone, Newark, N. J., for plaintiffs.

Joseph M. Jacobs, East Orange, N. J., for defendants.

## OPINION

BIUNNO, District Judge.

In each of these two cases, the same group of plaintiffs sue a defendant who was a consignee of goods shipped in ocean transport. The plaintiffs have moved for summary judgment in each case. Each defendant moves for dismissal. The underlying facts and the legal issues raised are exactly the same in both cases, thus making it possible to dispose of all four pending motions in this ruling.

*The facts.*

Each of the defendants is an importer and distributor of alcoholic beverages. Over the period of time covered by the

complaints, each defendant received shipments of such merchandise from overseas, transported by the facilities of one or another of the plaintiffs. The claims are for charges, incurred in connection with the overseas transport, i. e., for demurrage after discharge of the cargo, which are charges specified by tariffs filed by the overseas carrier plaintiffs with the Federal Maritime Commissions (as part of a Conference tariff).[1]

Defendants do not say, in their responding papers, that the charges were paid. Rather, the defenses are that over a long period of time, which includes all dates alleged in the complaint, it was a custom of the trade, or it was understood, or it was expressly agreed, that these charges, although billed by invoice, were to be disregarded and need not be paid; and that there has been a waiver or estoppel.

Defendants also assert that none of the plaintiffs has complied with the New Jersey "Corporation Business Activities Reporting Act," c. 171, N.J.P.L. 1973 (N.J.S.A. 14A:13–14 et seq., pocket part), a fact not denied, as a consequence of which it is claimed that plaintiffs may not sue in any state or federal court. The collateral history indicates that the present plaintiffs, along with two other overseas carriers, had asserted the same claims in identical suits in the Superior Court of New Jersey, in which there were voluntary dismissals as to the present plaintiffs who have filed these suits. It is probable that the other two overseas carriers not plaintiffs here had complied with N.J.S.A. 14A:13–20 a (pocket part), or were not within its terms.

*Jurisdiction.*

Since the claims arise by reason of Acts of Congress regulating commerce, i. e., The Shipping Act of 1916, 46 U.S.C. § 801 et seq., jurisdiction in this court exists under the terms of 28 U.S.C. § 1337.

*The Motions to Dismiss based on N.J.S.A. 14A:13–20 a.*

By its terms, this state law appears to close the doors of the state and federal courts to a corporate plaintiff not incorporated in New Jersey or authorized to do business there, which has not complied with the reporting requirement, see N.J.S.A. 14A:13–20 a (pocket part).

Plaintiffs respond that the statute contravenes the federal constitution and so is unenforceable here. If this claim were colorable, the court would be required to first certify the fact to the Attorney General of New Jersey, under the 1976 amendment to 28 U.S.C. § 2403 (and, see N.J.Court Rules, R. 4:28–4).[2]

However, since it is fundamental doctrine that the judiciary is not to deal with constitutional issues wherever the dispute can be decided on other grounds, that step is not required here.

It has been established law, at least since *David Lupton's Sons v. Automobile Club,* 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912), that the states have no authority to declare who may have access to the federal courts. These are courts of limited jurisdiction regulated by Acts of Congress, which in turn are part of the "law of the land" under *U.S.Const.* Art. VI.

As the result of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937) the rule of *Lupton's Sons* was modified. The modification was articulated in *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), and clarified in *J. S. Woods v. Interstate Realty Co.,* 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1948). The modification allows the states to close the courthouse doors in both the state and federal courts, but only in cases

---

1. It was disclosed at argument that all of the cargo was shipped in "containers", designed for transport on a truck-trailer; that the consignee was allowed 5 days after discharge of the cargo from the ship within which to pick it up without charge; and that the demurrage charges were for delays in picking up the cargo after the 5 days had expired.

2. It was made clear at argument that plaintiffs do not claim the New Jersey law is unconstitutional, but rather that it does not apply to this case, properly construed.

where federal jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and the rule of *Lupton's Sons* remains in force in all other cases, and may also apply to some diversity cases.

The Legislature and Governor of New Jersey are presumed to be aware of existing law, including paramount law as expounded by the Supreme Court of the United States. They are sworn to uphold the Constitution and laws of the United States as well as those of the State. When they enact a state law, they are presumed to have enacted a statute that is valid, not one that is unenforceable.

■ The statute, N.J.S.A. 14A:13–20 a, is accordingly to be construed as valid and enforceable by applying it to only those cases it can deal with, namely federal suits where jurisdiction is grounded solely on diversity of jurisdiction and not involving the Commerce Clause or other federal aspect. The constitutional aspect or question, then, is not colorable.

It is not necessary here to consider, much less to decide, the different question whether New Jersey may bar the doors of its own courts to a party having a claim or defense arising out of the Constitution or laws of the United States, in cases where the state courts have concurrent jurisdiction with the federal courts.

In this connection, see *Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), decided the year after the New Jersey statute was enacted, and *Grand Bahama Petroleum Co. v. Asiatic Petroleum*, 550 F.2d 1320 (CA–2, 1977). As a matter of state law, note New Jersey's constitutional grant to its Superior Court of "original general jurisdiction *in all causes*", *N.J. Const.*, Art. 6, § 3, par. 2 (emphasis added), with its ensuing limitation on state statutes.

■ Since the claims here arise by reason of an Act of Congress regulating commerce, with jurisdiction grounded on 28 U.S.C. § 1337, rather than on diversity of citizenship under 28 U.S.C. § 1332, it follows that the New Jersey statute must be construed not to apply, and the motions based on it must be denied.

### The defense of customs of the trade, etc.

■ Taking as true, as a matter of fact, that it was a custom of the trade, or understood, or expressly agreed, that the charges need not be paid though billed or invoiced, this defense must fall as a matter of law.

The Shipping Act of 1916 denounces all such arrangements both on the part of carriers, 46 U.S.C. § 817, and on the part of consignees, 46 U.S.C. § 815. This being so, no consensual arrangement, whether by custom of the trade, or by understanding, or by express agreement can be lawful, and so the defense cannot stand as a matter of law.[3]

In passing, the court takes judicial notice of its own records which disclose that at least one overseas carrier (not a plaintiff here) has twice been convicted in this court on criminal charges, and has been subjected to severe administrative penalties, as the result of granting unlawful preferences or rebates by devices of precisely the same nature as those raised here by way of defense. In doing so, the court expresses no view on the question whether the defendants have, by their answering papers, admitted violations which may be subject to criminal or administrative proceedings against them.

### The defenses of laches, waiver and estoppel.

■ The answer raises these defenses, but of them it is only necessary to take up

---

3. Cases to the effect that strict enforcement of the tariffs is required include *Gibert, etc. v. 245 Packages, etc.*, 508 F.2d 1116 (CA–5, 1975); *City of Galveston v. Kerr Steamship*, 362 F.Supp. 289 (S.D.Tex.1973), *aff'd* 503 F.2d 1401 (CA–5, 1974), *cert. den.* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975); and *Southern Pacific Co. v. Miller*, 454 F.2d 357 (CA–3, 1972).

In *Southern Pacific*, which involved the related statutes on railroad tariffs, the court ruled that:

"A contract to carry for less than tariff rates is void and will not prevent recovery of tariff rates. It is the carrier's duty as well as its right to enforce payment of full tariff rates."

waiver and estoppel since the defense of laches applies only to claims for equitable relief. The claims here are claims at law, and those sued for are within the period allowed by the 6 year statute of limitations.

■ On the defenses of waiver and estoppel, the claim made is that bills or invoices for the demurrage charges were not even sent until recently, or, in the alternative, to the extent they were, they were neither kept nor entered on defendants' books as accounts payable, in reliance on the custom of the trade, understanding or express agreement that there would be no charges for demurrage.

While it is true that claims or defenses may be stated in the alternative or hypothetically under F.R.Civ.P. 8(e)(2), it is fundamental that a party may not present diametrically opposed states of fact. For the purposes of the present motion, it will be assumed that defendants' attorney was told by one employee that such invoices as were received were not entered on the books but were discarded, and that some other employee told him that no demurrage invoices were received until recently.

In either case, the facts asserted do not raise a genuine issue on a material fact, as a matter of law. If bills were received but discarded in reliance on the supposed custom, understanding or agreement, the illegality of the practice bars the defense.

On the other hand, if no invoices were sent until recently, no defense arises so long as the bill was sent and suit was filed within the period of the 6 year statute of limitations.

The only precedent defendants have found is the decision in *The Argentino*, 28 F.Supp. 440 (SD–NY, 1939).

In that case, consignee filed a libel against the ship to recover a claim of $582.53 for damage to eight cars shipped from New York to Buenos Aires. After an offer to pay $100. was rejected, suit was filed. The proctors for the ship then obtained an order to show cause why the libel should not be dismissed on the ground that the libel was not filed within the time limited by law [at that time, one year, under the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(6)]. In response, it was argued that the general claim agent for the respondent had agreed not to raise the statute of limitations, i. e., to extend that time while negotiations were going on.

District Judge Leibell decided no more, in that case, than to deny the order, but without prejudice to the defense of limitations being decided at trial if raised in the answer when filed.

No further report indicates the ultimate disposition, but with a claim of less than $600., and a reluctant offer of $100., it is highly probable that denial of the order induced the ship to settle out on a more realistic basis without incurring costs and expense, and consuming judicial time and effort, on a claim which even if allowed in full was surely *de ·minimis.* Giving due regard to the Solomonic style of Judge Leibell in dealing with that libel, this court is of the view that the decision ought not to be followed here.

*The motions for summary judgment.*

■ Since the defenses are found to be without support in law, it follows that the motions for summary judgment in favor of plaintiffs should be granted. For the present, this ruling will be limited to the issue of liability, leaving open the matter of damages.

The reason for this is that plaintiffs have not supported their damage claim with references to the filed tariffs, or with copies of the bills or invoices.

Since the tariffs are required to be filed with a federal agency, the court may take judicial notice of them, Fed.Ev. Rule 201(b)(2), and authentication of the tenor is quite simple under Fed.Ev. Rule 902. See, also, N.J.Ev. Rules 9(2) and 68, with particular reference to the note to Rule 68 in regard to filed tariffs, privately published, made by the Rules of Evidence Study Commission of the N. J. Legislature at p. 63 (Gann Law Books, 1967), and the reference to the change effected by that rule and by

the amendment in 1960 to N.J.S.A. 2A:82–16, to overcome *State. v. Black*, 31 N.J.Super. 418, 107 A.2d 33 (App.1954).

The problem here arises because defendants say that as a result of the custom of the trade, the understanding or express agreement, they did not keep the bills or invoices but discarded them, if they received them (and without entry thereof on their books and records).

Each of these charges, however, arose in connection with some shipment which ought to reflect on defendants' books and records. Thus, for example, it is not uncommon for imported shipments of alcoholic beverages to be received in a bonded warehouse so that the consignee may postpone payment of both customs duties and of internal revenue taxes until such time as the goods are withdrawn from bond. For each of the shipments involved, the billings or invoices of plaintiffs ought to be capable of verification from the books and records of defendants reflecting the receipt of the goods into inventory and payment, on withdrawal from bond, of customs duties and internal revenue taxes.[4]

On the motion for judgment as to damages, therefore, disposition will be postponed to afford the parties an opportunity to verify the correctness of the charges claimed, both by reference to the tariffs and by inspection of defendants' records reflecting the receipt of the goods and, where applicable, the payment of customs duties and internal revenue taxes. This approach will also dispose of defendants' discovery motion.[5]

If the parties cannot resolve the issue of damages by informal discovery or negotiation on or before June 12, 1978, the court will thereupon appoint an accounting firm as an independent expert pursuant to Fed.Ev. Rule 706 for the purpose of conducting a suitable audit and filing a report with the court. If the issue is not sooner resolved, the parties are required to submit, on or before June 12, 1978, their nominations of an accounting firm, together with the names of their own independent accounting firms who served them in the past, or who are serving them now, and who will not be considered for appointment unless the parties are in agreement.

If this additional step proves necessary, it may be desirable to consolidate the cases for the purpose of ascertaining damages. In that event, the expenses of the independent expert will be allocated pending final outcome at 50% to be paid by plaintiffs in each case, as a group (subdivided pro rata by the amount of each claim), and 50% to the defendant involved. Final allocation as between the parties will abide the outcome.

*Interest.*

In gathering data for the issue of damages, the matter of interest will need to be dealt with. The period over which the claims arose include perhaps the highest interest rates in recent memory. Since interest is compensation for the use of money, some rate must be set to strike a balance between the interest saved by defendants and that incurred by plaintiffs. The going rates for commercial paper, as reported monthly by the Federal Reserve Bank of New York, may be a suitable index.

This item should also be discussed by the parties for resolution if they can agree. If not, it can be included in the instructions to the independent expert, who can ascertain the embedded rate of interest for short term borrowings by each plaintiff and for each defendant for the period involved.

---

**4.** It was said at argument that none of the goods were stored in bond, but this point is left open for whatever the records may show.

**5.** This same question evidently was raised in the initial action in the New Jersey courts. In response, plaintiffs gathered all the records by shipment, and have had them available for in-spection. Since shipments involve dates, the shipments can easily be arranged chronologically to permit verification against defendants' inventory records as well as its reports to the beverage tax unit which collects the New Jersey Tax, and its corresponding payments of customs duties and internal revenue taxes.