THOMSON–CSF COMPONENTS
CORP., Plaintiff,

v.

HATHAWAY INSTRUMENTS,
INC., Defendant.

Civ. No. 79–3059.

United States District Court,
D. New Jersey.

Feb. 4, 1980.

Arthur F. Dicker, Norris, McLaughlin & Marcus, Somerville, N. J., for plaintiff.

Louis E. Della Torre, Jr., Schumann, Hession, Kennelly & Dorment, Jersey City, N. J., for defendant.

## MEMORANDUM ORDER

BIUNNO, District Judge.

Thomson-CSF (Seller) contracted to sell to Hathaway (Buyer) a quantity of cathode ray tubes, these to be delivered according to a specified schedule. The items were to be complete picture tubes, ready to be installed as a component of electronic devices manufactured by Buyer.

Seller sued Buyer in this court to recover on a claim for unpaid purchase price. Buyer filed an Answer and Counterclaim, raising defenses that the tubes provided were defective and were not delivered according to schedule, and seeking an offset and/or damages for defective tubes, for late delivery, lost profits, and the like.

Seller then moved to dismiss the counterclaim on the ground that Buyer had not obtained a certificate of authority to do business in New Jersey as required by N.J. S.A. 14A:13–3, and accordingly was barred from maintaining "any action or proceeding in any court of this State" by virtue of N.J.S.A. 14A:13–11. Also asserted as a

ground was that Buyer had not filed a "notice of business activities report" under N.J.S.A. 14A:13–15 (1973), and so was barred from maintaining "any action or proceeding in any State or Federal court in New Jersey", by virtue of N.J.S.A. 14A:13–20 (1973).

The question whether New Jersey can close the courthouse doors to a non-resident party, not only to its own courts, but also to the federal court in this District has come up before, see *American Export Lines v. J & J Distributing Co.*, 452 F.Supp. 1160 (D.N.J., 1978). However, in that case the claim arose under federal law and jurisdiction here was not grounded on diversity, although the analysis there will provide context.

Jurisdiction in this case is grounded solely on diversity, 28 U.S.C. § 1332. Seller is a Delaware corporation with its principal place of business in New Jersey, while Buyer is a Colorado corporation with its principal place of business in Denver.

Before the present New Jersey court system and court rules, due process considerations precluded suit in New Jersey against a foreign corporation which has no place of business here and which was not "doing business" here. See, e. g., *Camden Rolling Mill v. Iron Co.*, 32 N.J.L. 15 (Sup. 1866); *Goldmark v. Magnolia Metal Co.*, 65 N.J.L. 341, 47 A. 720 (Sup. 1900); *Stocker v. Duro Co.*, 9 N.J.Misc. 439, 154 A. 534 (Sup. 1931); *McClelland v. Colt's Patent Fire Arms Co.*, 10 N.J.Misc. 156, 158 A. 329 (Sup. 1932).

The foreign corporation had to be "found" within the state, and this could only be shown if it were "doing business" here. *Carroll v. N. Y. Ry. Co.*, 65 N.J.L. 124, 46 A. 708 (Sup. 1900); *Doctor v. Desmond*, 80 N.J.Eq. 77, 82 A. 522 (Ch. 1912); *Apgar v. Altoona Glass Co.*, 92 N.J.Eq. 352, 113 A. 593 (Ch. 1921).

So, service on an agent, or director, or officer of the foreign corporation in New Jersey was ineffective if the corporation was not "doing business". *Roll-o-matic v. J. B. Marshall, Inc.*, 117 N.J.L. 463, 189 A. 661 (Sup. 1937).

Under those principles, unless Buyer were "doing business" in New Jersey, Seller could not sue here at all but would need to sue in Colorado, where Buyer's right to counterclaim could not depend on any New Jersey statute.

With the development of the "long-arm" concept by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) the "doing business" test was replaced by the "minimum contacts" test between the non-resident defendant and the forum state, without satisfying which personal jurisdiction cannot be exercised without depriving the party of due process. This principle has been expressly reaffirmed as recently as *World-Wide Volkswagon Corp. v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490, (1980).

New Jersey has a "long-arm" provision by court rule, R. 4:4–4(c), which has been construed to authorize service to the "outer limits" of due process, *Avdel Corp. v. Mecure*, 58 N.J. 264, 277 A.2d 207 (1971). The use of that rule is authorized in this court by F.R.Civ.P. 4(d)(7).

■ As noted in *American Export*, supra, constitutional questions are not to be reached and decided when the matter before the court can be ruled on with the support of a non-constitutional ground. That is the case here.

The key decisions are *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Byrd v. Blue Ridge, etc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); and *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

In this circuit, see *Witherow v. Firestone, etc.*, 530 F.2d 160 (CA 3, 1976) and *Edelson v. Soricelli*, 610 F.2d 131 (CA 3, 1979).[1]

1. *Edelson* dealt with the applicability of the Pennsylvania Health Care Malpractice Act of 1975, which requires submission of a malpractice claim to an arbitration panel before

there may be any access to the state courts on the claim. The statute of limitations is suspended during arbitration, and after completion an action may be begun for trial de novo. The

■ The rule of *Erie* required application of state "substantive" law but not "procedural" law in a diversity case in federal court. *Guaranty Trust* tried to provide guidelines through application of the "outcome determinative" test. *Byrd* retreated somewhat from that position, and ruled that the desire for similarity of result must be balanced with the need for independent integrity of the federal courts. Finally, in *Hanna* the distinction between substance and procedure was emphasized, and some areas were specifically marked out. Thus, under *Hanna*, if the issue is covered by a federal rule of procedure, that rule will apply.

■ In this case there is a specific federal rule that expressly deals with the issue. F.R.Civ.P. 13(a) describes claims which *"shall"* be stated as mandatory counterclaims, and the one asserted here fully matches the test. Thus, by a federal rule of procedure the Buyer is required to state the counterclaim it asserts, and that rule is to be applied rather than the New Jersey law relied on by plaintiff.

The same result is reached by a different analysis, which looks to the underlying purpose of *Erie*, which was to be discourage forum shopping. This subject has traditionally been discussed in terms of a party's search for a forum in which he can substantially increase the likelihood of a successful result. The experience of the federal trial court in this District is that with the development of "long-arm" jurisdiction, another motive is to keep the lawsuit where the lawyer's practice is located for cases that would otherwise have been had to be forwarded to a lawyer in another jurisdiction before "long-arm". In either event, it is Seller who chose the forum and brought Buyer into court. Had he filed suit in Superior Court, Buyer could have removed the case here. Thus, this is not a case where the foreign corporation, allegedly failing to comply with the statutes involved, chose the forum and has the courthouse doors, state or federal, shut to him so that he cannot enter. He is already inside the courthouse where Seller has brought him.

The facts which underlie the counterclaim are likely to be the same as those underlying the corresponding defenses. If the defenses are valid and proven, Seller's claim will be reduced or defeated. Thus, to say to Buyer, who has been taken into this court by Seller, that he will not be heard to present facts and law to support the counterclaim is to run a sort of "star-chamber" proceeding where only Seller's claim will be heard. The circumstances, in that event, would run counter to the strong policy, expressed in F.R.Civ.P. 54(c) that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

New Jersey's judicial policies are the same. See N.J. Court Rule R. 4:7 in respect to counterclaims, including mandatory counterclaims, R. 4:27–1(b), added to take effect September 10, 1979, embodying New Jersey's "entire controversy" doctrine, and R. 4:42–6, dealing with the grant of relief not demanded in the pleadings.

■ To apply the statutes relied on in the fashion urged by Seller would be to empower Seller to choose a forum in which (according to Seller), Buyer cannot assert its claim and thereby obtain a basis for preventing assertion of the claim elsewhere. Thus, if Buyer were hereafter able to sue Seller by independent action in Colorado to recover on the counterclaim, Seller would no doubt argue there that the claim was barred by res judicata for failure to assert it here because it did not have a certificate of authority to do business here, or because it failed to file a report of business activity here. This pattern strongly suggests a denial of due process, and the conclusion must be that the subject statutes, if valid and applicable in federal court here in a diversi-

classification is by type of claim and bears no relation to residents, non-residents or diversity of citizenship. It accordingly does not involve any of the questions raised by the New Jersey statutes here. It is the same as though New Jersey had a law requiring submission of all contract claims to arbitration before suit could be filed, without distinction as to parties.

ty suit, can only be applied in cases where the foreign corporation (i. e., the Buyer here) makes a forum selection of either a New Jersey court or of this court. They cannot be applied in a diversity suit here where the resident plaintiff has chosen the forum and brought the foreign corporation here against its will through the operation of a "long-arm" rule. That much is all that need be decided in this case.

The paradox of Seller's position is further demonstrated by examining the circumstances in *Erie*. There, Tompkins was a Pennsylvania citizen, was injured in Pennsylvania by an Erie train, and sued Erie in federal court in New York where Erie was a domestic corporation. At trial and on appeal, Erie unsuccessfully urged that the court apply Pennsylvania common law, whose rule was that a railroad owed no duty to undiscovered trespassers where nothing more than negligence was shown. The federal trial and appellate courts refused to do so, on the principles of *Swift v. Tyson*, 41 U.S. 1, 16 Pet. 1, 10 L.Ed. 865 (1842). The court overruled *Swift* and required that in diversity cases, the federal courts should apply "the law of the State." While the point is not discussed, this step involved application of principles of conflict of laws, because what was applied was not the law of the forum state, New York, but the law of the state where the alleged tort occurred, Pennsylvania.

In this case, if Seller had chosen to sue Buyer in federal court in Colorado, the statutes relied on could not be applied under any theory because by their own terms they govern "actions and proceedings" in the courts of New Jersey and (in the case of one statute) the federal court of this District. Thus, the law applicable on the issue would differ as between federal courts themselves, and would create a new dimension to forum shopping far beyond that considered and dealt with in *Erie* and its progeny. Under the balancing test of *Byrd*, which was not discarded by *Hanna*, it is plain that the need for independent integrity of the federal court system itself outweighs whatever considerations might otherwise justify application of the New Jersey

statutes. It would not do to have different results depend on whether the federal court selected sits in New Jersey or Colorado.

Unfortunately, most discussions of the subject in decisions and elsewhere focus on a dichotomy between "substantive" and "procedural" law. The difficulty with this phrasing is that it does not encompass all the law. A better formulation is to speak of "substantive" and "adjective" law, recognizing that "procedural" law is a subdivision of adjective law.

The statutes in this case are clearly of an adjective nature. They do not address the merits of any dispute. If they are procedural, then under *Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406 (1950), *cert. den.*, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638, they are beyond the power of the legislature. If they are more than procedural, yet short of substantive, then their application in a federal court in a diversity case will depend on the various tests laid down from *Erie* through *Hanna*, a matter which calls for applying federal law.

At the court's request, supplemental material was submitted in respect to N.J.S.A. 2A:15–67, et seq., and its predecessors. That statute requires every non-resident party asserting a claim in a complaint, counter-claim, cross-claim, or third-party complaint to make a deposit for costs on notice, failing which the proceedings on the non-resident claim is to be stayed until security be given.

Although the statute is an old one and often cited in state courts, no reported decision applying it in a federal diversity suit has been found.

The explanation may lie in the nature and purpose of the statute. A non-resident party who asserts a claim and fails on the merits may have no assets in New Jersey that could be reached by execution on a State court judgment for costs. The adverse party would be obliged to bring a new action elsewhere based on the judgment. However, if the suit be in federal court, a judgment for costs need only be registered (without a suit being filed) in any other

district and there enforced by execution, pursuant to 28 U.S.C. § 1963. This difference, evidently, has made resort to the costs statute unnecessary in this court, or so the absence of any reported case suggests.

Seller does refer to N.J.S.A. 14A:3–6, formerly 14:3–15, which calls for a deposit for costs in derivative suits brought in the name of the corporation by shareholders of less than 5% of the outstanding stock of any class. It is pointed out that the statute was upheld in *Cohen v. Beneficial, etc.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) as applied to a diversity suit in this court. However, there are two differences of significance. One is that the shareholders were plaintiffs; they had not been taken in to court by someone else. The other is that the statute applies to all shareholders, whether they be resident or non-resident.

Reliance on *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) is misplaced. That case upheld a Mississippi statute like N.J.S.A. 14A:13–11, and was followed in this court by *348 Bloomfield Ave. v. Montclair Mfg. Co.*, 90 F.Supp. 1020 (D.N.J.1950), but involved a non-resident plaintiff who selected the forum rather than a non-resident defendant taken in to the forum by another.

The decisions in *Eli Lilly v. Sav-on-Drugs*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961) and *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974), provide no assistance in resolving the issue raised. In both cases, the non-resident party was the plaintiff in a state court action, not a defendant drawn into court by another who had selected the forum. In *Eli Lilly*, the facts showed that the non-resident plaintiff was engaged in an intrastate activity, dealing with hospitals, pharmacists and physicians as well as in its major interstate activity which involved interstate sales to wholesalers. In *Allenberg Cotton*, the court found the entire activity to be interstate. Neither decision involved application of the *Erie* doctrine as modified and clarified.

Seller also relies on *Bozzuto's Inc. v. Kantrowitz, etc.*, 117 N.J.Super. 146, 283 A.2d

907 (App. 1971) where the court ruled that N.J.S.A. 14A:13–11 applied to any kind of claim by a foreign corporation engaged in intrastate business here, whether by complaint, counterclaim or cross-claim, relying on the language in the section which allows such a party to "defend" in a suit by another. But this interpretation, by the state's intermediate appellate court, neither addresses nor decides the *Erie* issue. The same difficulty is encountered with *Associates etc. v. Bozzarello*, 149 N.J.Super. 358, 373 A.2d 1016 (App. 1977). The intermediate court there did consider whether the 1973 statute, N.J.S.A. 14A:13–15 and 20, imposed an undue burden on interstate commerce, and concluded that it did not. But a state court ruling on a federal question is not binding in a federal court, in the first place, see *Angel v. Bullington*, 330 U.S. 183, at 188–189, 67 S.Ct. 657, at 660–61, 91 L.Ed. 832 (1947) and in the second place the question here is the application of the *Erie* doctrine, a matter not addressed by either decision.

It is noted, too, that one of the points relied on in *Bozzuto's* seems open to question in the context of the statutes involved. The passage reads:

> "In order to sue in our courts, domestic or qualifying foreign corporations must submit themselves to certain disabilities and obligations. It seems essentially unfair that a nonqualifying corporation should gain access by virtue of a relationship with another sufficiently unsatisfactory that it is being sued." 117 N.J.Super. at 151, 283 A.2d at 909.

So far as N.J.S.A. 14A:13–11 is concerned, this might be true as of the days when "doing business" was a prerequisite to jurisdiction over a non-resident corporation, in the sense that a domestic corporation does not "exist" without a certificate of incorporation (at least since the de facto corporation concept was eradicated), while a foreign corporation "doing business" must obtain an equivalent charter—the certificate of authority to do business.

But in an era of "long-arm" jurisdiction, this seeming equivalence no longer exists.

And, insofar as the 1973 statute is concerned, it is plainly intended to implement the filing of reports and the collection of taxes, yet no bar to the use of the courts is raised for a domestic corporation that has not filed its annual report or its annual business corporation tax return. Nor does it provide for a mere defense, as does N.J. S.A. 14A:13–11.

Finally, Seller observes that it has not yet completed discovery to gather the facts about Buyer's intrastate activity in New Jersey. This point implies that the objection should have been raised by "reply" to the counterclaim, F.R.Civ.P. 7(a), with a motion to follow discovery. If this were the only aspect involved, the court would deny the motion without prejudice to renewal after discovery.

However, since it is clear under the *Erie* doctrine as modified and clarified that both statutes should be read as not applying to a case where the non-resident corporation is already in court, brought there by Seller's choice of forum, the facts obtained on discovery would not alter the result.[2]

Other questions implicated but not involved here, such as the constitutional issue and the effect of *Erie* when the non-resident party is the plaintiff in this court in a case grounded solely on diversity, are left for another case and another day.

The motion is denied.

SO ORDERED.

---

**2.** The answer suggests that there may yet be a motion to dismiss for lack of jurisdiction or for a change of venue. If either motion be made and correctly granted, the facts gathered by discovery could not affect the present ruling. Absent jurisdiction, there will be no case to decide on the merits. In the event of a transfer to the District of Colorado, the objection to the counterclaim could not succeed.

Not considered by any decision the court has found is the question of applying *Erie* if Buyer had sued Seller first in Colorado federal court (or in State court followed by removal), and if Seller had succeeded in having the case transferred here. The New Jersey statutes could not be applied in the Colorado court. Could they be applied to Buyer, who would then be a plaintiff, after transfer here? Probably not since selection of the forum here would be at the instance of someone else.